[Whitaker v, The State.]

# Whitaker v. The State.

*Indictment for Murder.*

1. *Evidence; facts leading up to the affray which resulted in the homicide inadmissible.*—Where, on a trial under an indictment for murder, it is shown that the quarrel resulting in the affray in which the homicide was committed originated in fun making by the defendant and others, the fact that while the affray was in progress between the defendant and the deceased, one of the persons engaged in "the play," without the knowledge of the defendant or the deceased, manifested a purpose to interfere for defendant's assistance and was resisted by the brother of the deceased, is inadmissible in evidence; such fact being merely incident to the difficulty which resulted in the homicide, and happening casually, without the knowledge, design or expectation of the deceased or the defendant, constitutes no part of the *res gestae.*

2. *Same; the fact of the flight of a person other than the defendant.*—On a trial for murder, the fact that one of the persons who participated in the quarrel resulting in the difficulty in which the homicide was committed disappeared for three weeks immediately after the killing, is inadmissible in evidence.

3. *Charge of court to jury; exceptions to the giving or refusal of written charges presumed.*—Under the provisions of the act "to regulate exceptions to the giving or refusal of charges asked in writing, and to give effect thereto," approved December 17, 1894 (Acts 1894-95, p. 126), when charges are asked in writing, an exception is presumed at the instance of the party asserting error in the giving or refusal of them, and it is unnecessary for such party to reserve an exception to the giving or refusal of such charges.

4. *Same; reasonable doubt.*—In a criminal case, a charge which instructs the jury that if they "believe from the evidence that the defendant did or said anything intended or calculated to produce the difficulty," in which the deceased was killed, "he is not entitled to an acquittal under the doctrine of self-defense," is erroneous because it does not exact the proper measure of belief on the part of the jury; the belief of any particular fact necessary for the defendant's conviction must be so strong as to leave no reasonable doubt of its truth.

5. *Same; same.*—In a criminal case, a charge which instructs the jury that "if the evidence in this case convinces the jury that there is a probability of the innocence of the defendant, then your verdict should be not guilty," asserts a correct principle of law, and should be given; a probability of innocence being the equivalent of a reasonable doubt, requiring the acquittal of the defendant.

[Whitaker v. The State.]

Appeal from the Circuit Court of Madison.

Tried before the Hon. H. C. Speake.

The appellant, John R. Whitaker, was indicted, and tried for the killing of "Bat" Whitaker, and was convicted of manslaughter in the first degree and sentenced to imprisonment in the penitentary for two years.

At the time of the killing, there were a number of people at a certain church in Madison county, for the purpose of attending a singing school. The deceased and his brother, Jack Whitaker, were playing marbles with some girls, while the defendant, John S. Ikard and some others were engaged in "a play" of lifting up men and carrying them around on their hands. After having lifted up several men in this manner, they came to Jack Whitaker, and in his efforts to prevent being lifted and carried around by the defendant, Ikard, and others, he kicked the defendant in the eye, making a black place. After Jack Whitaker was released, the deceased. Bat Whitaker, came up to the defendant, and there ensued a quarrel, which resulted in a fight, in which fight the defendant stabbed Bat Whitaker, from the effects of which wound the said Whitaker died in a few minutes.

The testimony in behalf of the State and the defendant was in conflict as to who was the aggressor in the fight; and there was also conflict in the testimony as to whether the deceased had his knife open, cutting at the defendant, when the fatal blow was struck by the defendant. There was much testimony introduced, against the objection and exceptions of the defendant, as to what part in the difficulty John S. Ikard took, and as to his preventing Jack Whitaker from striking the defendant while the defendant and the deceased were fighting.

At the request of the State, the court gave the following written charge: (1.) "If the jury believe from the evidence that the defendant did or said anything intended, and calculated to produce the difficulty in which Bat Whitaker was killed, he is not entitled to an acquittal, under the doctrine of self-defense." The defendant duly excepted to the giving of this charge by the court, and also excepted to the court's refusal to give the following charge requested by him : (6.) "If the evidence in this case convinces the jury that there is a probability of the innocence of the defendant, then your verdict should be not guilty."

[Whitaker v. The State.]

WILLIAM RICHARDSON, for appellant.—The court erred in admitting the evidence of the acts and declarations of Ikard, and overruling the defendant's objections to the questions and answers.—*McAnally v. State*, 74 Ala. 16; *Johnson v. State*, 87 Ala. 39; *Amos v. State*, 93 Ala. 1; *Sylvester v. State*, 71 Ala. 17.

The first charge requested by the State was erroneous, and should not have been given.—*Green v. State*, 97 Ala. 64; *Cagle v. State*, 87 Ala. 38; *Childs v. State*, 58 Ala. 349; *McAnally v. State*, 74 Ala. 9; *Newton v. State*, 92 Ala. 33; *Pierson v. State*, 99 Ala. 148; *Heath v. State*, 99 Ala. 179; *Hooks v. State*, 99 Ala. 166; *McCormack v. State*, 102 Ala. 156.

Charge number six, asked in writing by the defendant and refused by the court, asserted a correct principle of law and should have been given.—*Cohen v. State*, 50 Ala. 109; *Bain v. State*, 74 Ala. 38, (overruling *Williams v. State*, 52 Ala. 411); *Winslow v. State*, 76 Ala. 42-49; *Smith v. State*, 92 Ala. 30; *Croft v. State*, 95 Ala. 3.

WILLIAMS C. FITTS, Attorney-General, for the State.

BRICKELL, C. J.—In the course of trials by jury, a grave duty resting on the court not infrequently attended with much difficulty, is to guard against the introduction of irrelevant evidence. Such evidence is but seldom harmless; if admitted, it often necessitates widening the scope of inquiry, directing it to facts and circumstances which, if found, ought not to exert an influence in the determination of the issues; may surprise and oppress the party against whom it is introduced, who cannot be presumed to be prepared to meet other than material, relevant evidence; prolongs trials injuriously, and has the effect, or tendency, to mislead the jury directing their attention from the evidence on which the verdict ought to be based. The test of the relevancy of evidence, it is said by Wharton, is, whether it "conduces to the proof of a pertinent hypothesis; a pertinent hypothesis being one, which if sustained, would logically influence the issue."—1 Whart. Ev., § 20.

The cause of quarrel resulting in the affray in which the homicide was committed appears to have originated in that which is termed in the evidence, "the play," in which the brother of the deceased was borne about

against his will, by the defendant, Ikard and others participating, and until the killing the quarrel was continuous. But without concert or combination, there were different participants in it. While the affray was in progress between the defendant and the deceased, without the knowledge of either, Ikard manifested a purpose to interfere for the assistance of the defendant, and was resisted by the brother of the deceased. These occurrences may be traced to, and sprang from the source provoking the affray, and are in point of time coincident with it; they were not parts of the *res gestae*; they were mere incidents happening casually without the knowledge, design, or expectation of the deceased, or of the defendant. The controlling, central inquiry was, the fact that the homicide was committed by the defendant not being matter of controversy, as to the degree of guilt of the defendant, or whether he was not excusable or justifiable, because the homicide was committed from necessity, in defense of his own life, or for the prevention of great bodily harm. The degree of his guilt could not be magnified or diminished because of these occurrences happening without his knowledge, design, or expectation. Nor could these occurrences elucidate the inquiry whether he was excusable or justifiable, necessitated to take life to save his own, or to preserve himself from great bodily harm. Nor can they throw light on the inquiry, whether he or the deceased was the aggressor in the affray. There is no pertinent hypothesis involved in the issue, to the proof, or disproof of which these occurrences have a logical tendency; as to the defendant they were essentially *res enter alios acta*, which ought not to affect him. If Ikard was the aggressor, if by his conduct he provoked these occurrences, upon him the consequences, not upon the defendant, ought to be visited. But upon him, no injurious consequences ought to be visited, until an inquiry be made into his guilt. If the inquiry is made the scope of the evidence is widened, directed to collateral facts, and a side issue is formed upon which the jury are to pass, and which is involved in the general verdict they are to render. We are of the opinion that the circuit court erred in the admission of evidence of these occurrences. A more patent error was committed, in the admission of evidence that immediately after the

homicide, Ikard disappeared for three weeks. If he were charged with the homicide or complicity in it, and was on trial, evidence of his flight immediately after the homicide, the flight being unexplained, might be a criminating circumstance of more or less value. But by his flight, the defendant cannot be criminated, nor relieve himself by explanation of its criminating tendencies. The remaining rulings of the court touching the admission or rejection of evidence, are free from error.

It is stated in the bill of exceptions, that exceptions were not reserved to the giving or refusal of the instructions which are introduced into it. Prior to the recent statute, approved December 17th, 1894, the rule prevailing in this State was, that exceptions to instructions given or refused, must have been reserved before the retirement of the jury. The statute has changed the rule, and now, under its provisions, when the instructions are in writing, an exception is presumed, at the instance of the party asserting error in the giving or refusal of them. The trial in the court below was had after the change of the statute, and the correctness of the instructions is open for revision, as it would have been formerly had exceptions been reserved before the retirement of the jury.

There is a marked familiar distinction between civil and criminal cases in respect to the degree or quantity of evidence which will support the verdict of a jury. In civil cases, a mere preponderance of evidence, if it satisfies the minds of the jury is sufficient. But in criminal cases, "neither a mere preponderance of evidence, nor any weight of preponderant evidence is sufficient for the purpose, unless it generate full belief of the fact to the exclusion of all reasonable doubt."—3 Green. Ev., § 29. In instructions given the jury by the court *ex mero motu*, or at the instance of the State, referring to the evidence and its sufficiency to support a verdict, or to prove a criminating fact, the distinction must be observed, or the instruction will not be free from error. The distinction was lost sight of in the first instruction given at the instance of the State. The jury were instructed that if they believe from the evidence, not full belief to the exclusion of all reasonable doubt, but a belief generated it may be by a mere preponderance of

the evidence, that the defendant provoked the difficulty in which the killing occurred, he was not entitled to an acquittal on the doctrine of self-defense. "Believing from the testimony that the facts exist is not enough. The belief must be so strong, as to leave no reasonable doubt of its truth."—*Pierson v. State*, 99 Ala. 148; *Heath v. State*, Ib. 179; *Rhea v. State*, 100 Ala. 119.

The sixth instruction requested by the defendant, ought to have been given. It merely re-affirms the proposition, which ought now to be familiar, that a probability of innocence, is the equivalent of a reasonable doubt, and requires the acquittal of the defendant.— *Bain v. State*, 74 Ala. 38; *Winslow v. State*, 76 Ala. 42; *Smith v. State*, 92 Ala. 30; *Croft v. State*, 95 Ala. 3.

The remaining instructions have been considered, and we find in giving or refusal of them no reversible error. The subject of them has been of such frequent consideration and decision in this court, that it is unnecessary to protract the opinion by a discussion of them.

The judgment, for the errors we have pointed out, must be reversed, and the cause remanded. The defendant will remain in custody, until discharged by due course of law.