# Bailey *v.* The State.

## *Murder.*

(Decided April 18, 1912. 58 South. 675.)

1. *Evidence; Admissibility.*—Pertinent evidence is always admissible, however weak it may be, as its sufficiency is a question for the jury.

2. *Homicide; Evidence.*—Where the theory of the state was that the defendant and his sons conspired to kill decedent because of certain language used by decedent, and that the defendant and his sons voluntarily engaged in the difficulty, it was error to exclude testimony that at the time and the place of the homicide, defendant was on his way to a neighbor's to deliver a message for his wife, and that he believed the deceased had gone home.

APPEAL from Monroe Law and Equity Court.

Heard before Hon. L. J. BUGG, Special Judge.

James R. Bailey was convicted of homicide and he appeals. Reversed and remanded.

BEN F. ELMORE, H. H. McCLELLAND, and J. D. RATCLIFFE, for appellant. Felony charges can only be

originated by indictment, and the court whose grand jury finds the indictment is the court with jurisdiction to try the case so originated.—*Ex parte O'Neal*, 45 South. 713; *State v. Fuller*, 41 South. 990. The attempt, therefore, by the act creating the law and equity court to deprive the circuit court of jurisdiction was inoperative and void, as violative of the Constitution.—*Adcock v. The State*, 142 Ala. 30. Counsel discuss the evidence and insist that the court committed several errors in the rejection and admission of testimony, and in support thereof, they cite.—*Collins v. The State*, 137 Ala. 50. The oral charge excepted to was erroneous.—*Jolly v. The State*, 94 Ala. 19. The charge was also on the effect of evidence, and was given without request.—*Edgar v. The State*, 43 Ala. 312; *Beasley v. The State*, 50 Ala. 149.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. Rulings on motion for new trial in criminal cases are not revisable.—*Ferguson v. The State*, 149 Ala. 21; *Herndon v. The State*, 56 South. 85. Questions calling for the opinion of the witness are improper.—*Walker v. State*, 58 Ala. 393; *Weaver v. State*, 1 Ala. App. 48. A man may be a quarrelsome and fighting man and yet not be dangerous or bloodthirsty.—*Rhea v. The State*, 10 Ala. 119. A defendant is never permitted to show self serving declarations, and a witness may not testify as to another's intention.—*Burke v. State*, 71 Ala. 377; *Fonville v. State*, 91 Ala. 39; *Lewis v. The State*, 96 Ala. 6; *Linnehan v. State*, 120 Ala. 293. The testimony of the witness Stacy was not objectionable, and the objection came too late.—*Washington v. State*, 106 Ala. 58; *West P. Co. v. Andrews*, 150 Ala. 368. The court's oral charge was correct.—*Jolly v. State*, 94 Ala. 19; *Evans v. State*, 109 Ala. 11; *Morris v. State*, 146 Ala. 66.

[Bailey v. The State.]

DE GRAFFENRIED, J.—There was some evidence in this case tending to show that a short while before the deceased came to his death the defendant and the deceased had a difficulty in front of the defendant's gate, that the deceased then went down the road in the direction of his home, and that the defendant walked back into his home, or within its curtilage. It appears that one Wisenhant lives near the defendant's home, and that Wisenhant is a married man. The evidence further shows that the defendant was in the road near his barn, at a point between his home and Wisenhant's home, when the fatal difficulty took place. The defendant and two of his sons, the evidence tends to show, were participants in the difficulty. The deceased was killed by the defendant or some of his sons, and the father of the deceased was knocked senseless by a blow inflicted upon him by the defendant. The deceased received two pistol balls in his body, from the effects of which he died immediately, and he also received on the arm a gunshot wound which did not contribute to his death. The evidence tended strongly to show that the deceased and the father of the deceased were drinking at the time of the difficulty, and the evidence tended, also, to show that the deceased was rude and indecent in his behavior towards the defendant when the first difficulty took place—if in fact there was, in truth, but one difficulty—and that he boisterously applied rude and indecent epithets to the defendant at a point immediately in front of the defendant's house, or near his house, and in the presence and hearing of defendant's wife and daughter and the other members of his family.

One of the theories of the state was that a conspiracy was entered into, either by express or implied agreement—and there was evidence tending to show an ex-

press agreement—by the defendant and his sons to kill the deceased, and, if necessary, his father, because of the foul epithets which had been or were being applied by the deceased to the defendant, and because of the unseemly conduct of the deceased near the defendant's home. There was evidence tending to show that the defendant, in fact, did not go back into his home from the time of the first difficulty until after the homicide; that he called for his gun, which was brought him, and that he was joined by his sons, who were armed; and that they remained in the road, or near it, at or near the defendant's house, and voluntarily engaged in the fatal difficulty.

For the purpose of rebutting the theory that there was a conspiracy, and for the purpose of explaining his presence on the road at the point and time of the fatal difficulty, the defendant offered some evidence tending to show that after the first difficulty he was informed that the deceased had left and gone home; that defendant went back into his home or within the curtilage of his dwelling and afterwards, under the belief that the deceased had gone home, he went back into the public road in the direction of Wisenhant's home, where he was suddenly and unlawfully attacked by the deceased and the father of the deceased, who were armed with knives; that, when the deceased attacked him, he fired two shots into the ground to try to stop the deceased, who nevertheless continued to advance on him; that his sons, hearing the noise, ran to his assistance, and shot the deceased while the deceased was in the act of killing the defendant, who was then undertaking to avoid the deceased, and that the defendant, at the same time, struck the father of the deceased over the head with his pistol, and that, when defendant struck the father of the deceased, he was in the act of unlawfully

killing defendant. The above statement of the evidence may not be accurate in all of its details, but it is stated with sufficient accuracy to illustrate our views as to the only legal question presented by this record.

For the purpose of rebutting the conclusion, which the jury were authorized to draw from a consideration of all the evidence that the defendant, after the first difficulty, having gone into his home or within the curtilage of his dwelling, a place of safety, voluntarily and without reason therefor went back into the road and in the direction in which the deceased had gone, a place in which danger might have been anticipated, and that his purpose in so doing must have been to renew the difficulty, the defendant offered to prove by his daughter, who testified as a witness, that the wife of the defendant requested him to go up to Mrs. Wisenhant's and request her to come down and sit with the defendant's baby, who was quite sick at the time; that immediately thereafter the defendant left the house, and went down the road in the direction of the Wisenhant home; and that shortly thereafter the shooting took place. There was evidence in the case tending to show that immediately preceding the firing of the first shots the defendant called Mr. Wisenhant, and the defendant testified that, when he called Wisenhant, the deceased or the father of the deceased said, "Look out, Jim Bailey, God damn you, I am coming!" and that the fatal difficulty was immediately precipitated by the deceased and his father; that it was in the night, and defendant did not know of the presence of the deceased or of his father until he heard the language above quoted. In other words, the defendant offered this testimony for the purpose of explaining his presence in the road at the place of the difficulty and at the time of the difficulty. We say that he offered to introduce this

evidence for that purpose because it is the only purpose for which it could have been offered—the only ground upon which it can be claimed that the testimony was relevant. The court was of opinion that the evidence was illegal and excluded it from the jury. The question before us, then, is: "Was that testimony relevant?"

The defendant undertook, in two or three ways, to get this evidence before the jury, and the court refused to allow it, not because of any technically inaccurate way in which it was offered, but because, as was stated by the court to counsel for the defendant, "I don't think that would shed any light on what took place between the Johnsons and defendant. I think the question before the jury is what took place out there between the defendant and the Johnsons." Of course, the main inquiry before the jury was, as stated by the trial court, "what took place out there between the defendant and the Johnsons," but, as shedding light on the quo animo of the defendant in being "out there," the question is, "Was it not relevant for the defendant to offer evidence tending to explain why he was 'out there' at the time of the difficulty? Did not the rejected evidence, if believed, have some tendency to explain, satisfactorily with the defendant's theory that he did nothing to provoke the final fatal rencounter and did not enter willingly therein, the presence of the defendant at the scene of the homicide, and was it not relevant on that theory?"

The question now presented was recently before us in the case of *Cross Pearce v. State Infra,* 58 South. 996, present term. In that case we held that the court committed reversible error in refusing to allow the defendant to offer evidence tending to show why he was present at the scene of the homicide at the time the homicide occurred.—*Cross Pearce v. State.* While the cir-

cumstances attending the commission of this homicide, as shown by the physical facts and by the other testimony in the case, may so seriously challenge the truth of the rejected testimony as to destroy its probative force and convince the jury that it is not worthy of credit, its credibility, and the weight to be given it, are questions of fact, not of law, and are questions with which we have no right to deal. Pertinent evidence, however weak, is admissible. Its sufficiency is a question exclusively for the jury.—*Alsabrooks v. State,* 52 Ala. 24. "'The test of the relevancy of evidence in criminal cases is whether it conduces to the proof of a pertinent hypothesis; a pertinent hypothesis being that which, if sustained, would logically influence the issue." —*Whitaker v. State,* 106 Ala. 30, 17 South. 456; *Curtis v. State,* 118 Ala. 125, 24 South. 111; 1 Mayfield's Dig. p. 317, § 91. The testimony offered, and rejected by the court, taken in connection with the testimony which the defendant had already introduced tending to show that there were two difficulties instead of one, and that after the first difficulty the defendant was informed that the deceased had left, was relevant, and if believed by the jury, material. While the rejected testimony, if true, afforded the defendant no excuse whatever for committing an illegal homicide, it did have some tendency to show, if believed by the jury, that at the time of the fatal difficulty the defendant was at the place of the difficulty, not for the purpose of provoking a difficulty with the deceased or of willingly engaging in one with him, but for another and entirely different purpose. The relevancy of evidence is a question of law for the court. If relevant, then its truth, and if true, its weight, are questions for the jury.

The court, therefore, in refusing to allow the defendant to introduce this evidence, committed reversible error.—*Cross Pearce v. State, supra.*

Reversed and remanded.