# McElroy *v.* The State.

### *Indictment for Murder.*

1. *Venire in capital case; motion to quash.*—Under the provisions of the statute regulating the drawing and impanelling of grand and petit jurors in the county of Dallas (Pamph. Acts, 1882–3, p. 273; *Ib.* p. 446), the failure of the sheriff to find a person whose name is on the list of

[McElroy v. The State.]

jurors drawn by the court, and ordered to be summoned for the trial of a capital case, is no ground for quashing the venire.

2. *Confession; when admissible.*—Confessions made in this case held admissible, although made while the defendant was under arrest for the crime charged, and to the persons making the arrest.

3. *Charge; when free from error.*—Where, on the trial of a defendant for the murder of his wife, the evidence tended to show that the defendant killed his wife by wantonly striking her with an ax, a charge instructing the jury, that the law presumes that every person intends to do that which he does, and that the defendant must be presumed to have designed, not only what he did, but also the necessary consequence of his act, unless he could show to the contrary, is free from error.

APPEAL from City Court of Selma.

Tried before Hon. JON. HARALSON.

James McElroy, defendant in the court below, appellant here, was indicted for the murder of Mary McElroy, his wife, by striking or cutting her with an ax ; and on the trial he was convicted of murder in the first degree, and sentenced to death by hanging. On the day set for the trial, and before the trial was begun, the defendant moved the court to quash the venire, on the ground, in substance, that among the number of jurors drawn and ordered to be summoned for the trial, was one Sneed Mays, "who had not been summoned by the sheriff, and was not then present in court." On the hearing of the motion, the court allowed the State to prove, against the defendant's objection, that the deputy, who had been charged with the duty of summoning the jurors, went to the house of said Mays for the purpose of summoning him as a juror in this case, and, arriving after dark, he was told by a person whom he could not see on account of darkness, but who was, judging from his tone of voice, a negro, that Mays was absent from home on a visit in Wilcox county, and that he would not return before the Monday of the next week ; and that he thereupon returned said Mayo not found, without making any other effort to summon him. The court overruled the defendant's motion, and refused to quash the venire ; and to this ruling, and to the ruling admitting the evidence offered by the State, the defendant duly excepted.

The State, after examining one Edith Craig as a witness, who testified "that she saw the defendant kill his wife, last fall, in Dallas county, with an ax, and to all the facts attending the killing," examined one James E. Kennedy as a witness, who testified that "he heard of the killing the morning it was done ; that he got Mr. Lovett to go with him in pursuit of defendant, to apprehend him, and, on the way, they were joined by two young men, Mr. Edwards and Mr. King, and that they followed by his tracks in the road, and came in sight of him some seven or eight miles from where the killing

occurred. Defendant was walking rapidly, and had his budget of clothes. We rode fast and passed him. When he came up, I arrested him. He surrendered at once. The others were a little way off when I arrested him, behind some bushes. I asked him if he killed his wife. He said, yes. I asked him why he killed her, or what he killed her for. He said he had the devil in him, or the devil made him kill her; I don't remember in which form he put it. I asked him, what he killed her with. He said he killed her with an ax. I then told one of the young men who had come up, to get a string and tie him. That was done. While tying him, or before we tied him, or about that time, defendant remarked: 'You have caught me, and, Captain, you can just take me out and hang me to a tree. I am ready to die.' We then started back, and a good deal was said, but I don't remember all he said. He talked freely to others, Edwards, Lovett and King, who were there." Preliminary to the introduction of the confession noted above, it was also shown that said Kennedy, when he came up to defendant, had "a double-barrel gun, at a present arms;" that defendant asked Kennedy not to shoot, in response to which Kennedy replied that he would not shoot if he, defendant, would surrender; that Kennedy "kept his gun so he could use it, until he knew that they had defendant safe;" that the defendant had known Kennedy for a long time; that nothing was said to the defendant tending to induce him to believe that it would be better for him "to tell it all;" that no threats were used, nor inducements offered; that the defendant seemed to be cool and reckless, and that witness, while he may have spoken in a prompt, firm tone, did not speak in an unusual tone. The defendant objected to the admission of the confession, on the ground, in substance, that it was not freely and voluntarily made; but the objection was overruled, and the confession admitted; and to this ruling the defendant excepted."

"The defendant then introduced Joe Edwards as a witness, who testified: "I went with Kennedy to arrest defendant. I was a good step off, near by, when he was arrested. I did not know what passed between Kennedy and defendant when he was arrested. I went up. I said, 'Jim, you killed your wife, or what did you kill your wife for; you are going to be hung for it.' He said the devil made him do it. I heard nothing that was said between him and Kennedy before. I went and got a line and tied him. On his way back he talked a good deal. Mr. Kennedy had his gun, a double-barrel, at a present, facing defendant, and close to him, until he was tied. Defendant had known witness and Kennedy a number of years, and he was very humble and obedient to white men."

On the testimony of this witness, the defendant moved to exclude the confession made to the witness Kennedy; but the court overruled the motion, and the defendant excepted.

The defendant also reserved an exception to the following charge given by the court to the jury: "That the law presumes that every person intends to do that which he does; that he must be presumed to have designed what he did, or what is the necessary consequence of his act, unless he can show to the contrary."

S. W. JOHN, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—The court, in our judgment, committed no error in overruling the motion made by the defendant to quash the *venire*. The ground of this motion was the failure of the sheriff to find one of the jurors whose name was on the list of those drawn by the court and ordered to be summoned, in accordance with the provisions of the special law regulating the drawing and impanelling of grand and petit juries in the county of Dallas.—Acts 1882–83, pp. 273–278, 446.

It is one of the provisions of this law that where any person stands indicted in the city or circuit court of Dallas county for a capital felony, the judge shall make the usual order required by section 4874 of the Code, "commanding the sheriff to summon not less than fifty, nor more than one hundred persons, including those summoned on the regular juries for the week." It is also made his duty, in open court, to cause to be drawn from a "jury box" provided for by the statute "the number of names required, with the regular jurors for that week, to make the number named in said order," and "shall cause an order to be issued to said sheriff to *summon said persons* therein named" to appear in court on the day set for the trial of the defendant.—Acts 1882–83, § 4, p. 449. It is made a contempt of court if the sheriff negligently fail to summon any person on this list.—§ 7, p. 450. There is nothing in the statute, however, which provides for the contingency of a failure by the sheriff to find any one or more of this list of jurors.

The record shows that the court made an order allowing the defendant fifty jurors, including the regular jurors impanelled for the week, of whom there appears to have been twenty-nine. The list of additional jurors drawn, as required by the statute, and furnished to the sheriff to be summoned by him, contained twenty-one names. One of this list, a man by the name of

[McElroy v. The State.]

Myers, he failed to find, after making inquiry for him at his usual place of residence, where he ascertained that Myers was absent from home on a visit to another county.    The return of the sheriff showed that this juror was not found.    We are unable to see why this should be any ground for quashing the venire, especially in view of the offer of the solicitor, with the consent of the court, to place the name of the absent juror in the box, and when drawn to challenge him on behalf of the State.    This offer, however, was unnecessary.    It could not have been contemplated that the sheriff would always be able to find every juror whom he was ordered to summon. He must sometimes fail in the nature of probabilities.    The court has literally pursued every step required by the statute, and the sheriff seems to have performed his duty properly.    If the law operates unjustly in some cases, the remedy is for the legislative, and not the judiciary department.

The confessions of guilt made by the defendant were clearly voluntary, and therefore admissible.    They are shown to have been made free from the influence of fear or hope applied to the prisoner's mind, and thus operating to induce them. The fact that the accused was under arrest at the time for the crime charged, as uniformly held, would not render his confessions inadmissible, whether made to an officer of the law or any other person.—Aaron v. The State, 37 Ala. 106 ; Whart. Cr. Ev. §§ 647–672; Redd v. The State, 69 Ala. 255 ; Meinaka v. The State, 55 Ala. 47.    We find nothing in the facts of this case bringing it within the rule declared by this court in Young & Griffin v. The State, 68 Ala. 569, where certain confessions made by the prisoners were held inadmissible, because they were elicited by the terror of surrounding circumstances, suspicious and menacing in their character.

The evidence tends to show that the prisoner murdered his wife by wantonly striking her with an axe.    The charge of the court, when construed, as it must be, in reference to the evidence, was unquestionably correct in declaring that the law presumes every person intends to do that which he does, and that the defendant must be presumed to have designed not only what he did, but also the necessary consequence of his act, unless he could show to the contrary.    This charge involves a settled and elementary principle of law.—1 Greenl. Ev. § 18 ; 4 Cooley's Bl. Com. * 222, n. (4) ; Clark's Man. Cr. Law, § 182.

We discover no error in the record, and the judgment of the city court, with the sentence of death which it has pronounced upon the prisoner, must be affirmed.