264 So.2d 214

**Melton Eligah GUY, alias**

v.

**STATE.**

**6 Div. 376.**

Court of Criminal Appeals of Alabama.

June 13, 1972

Rehearing Denied June 30, 1972.

Thompson & Hartwig, Cullman, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charges murder in the first degree. The jury returned a verdict of guilty of murder in the second degree, and judgment fixed punishment at seventeen years imprisonment.

The uncontroverted evidence established that on the night of October 31, 1970, at

the appellant's home in Cullman, Alabama, the appellant did kill one Kenneth McIntosh by shooting him with a pistol.

State's witness, Thomas Dunn, testified that on the night in question he had a Halloween party at his home in Cullman County, Alabama. Among those attending the party were the deceased and his wife, and the appellant and his wife. He testified he heard appellant and deceased arguing loudly in the kitchen. He stated that his wife had asked the appellant to leave because of the argument, and appellant, upon leaving, remarked, "I am going to get my gun and come back and kill that son-of-a-bitch."

Dunn testified that, after leaving, the appellant returned in about thirty or forty minutes, waving a pistol, and asked where his wife was; that when Mrs. Guy came to the door, appellant asked her if anyone was mistreating her, and when she answered negatively appellant slapped her two or three times, knocking her down; that appellant and his wife left "after he had several words arguing and cussing around." The deceased and his wife left the party shortly thereafter. It was Dunn's testimony that appellant had been drinking and was "pretty high," and that Mrs. Guy was quite drunk and unable to walk by herself.

Peggy Dunn, wife of Thomas Dunn, testified that she heard appellant and deceased arguing in the kitchen and that she asked appellant to leave. It was her testimony that when the appellant came back to get his wife, whom she said had been drinking quite heavily, "he came back with the gun and started scuffling and he hit her and knocked her back on the porch. . . ." She stated that the deceased left the party about an hour or more after appellant left.

Judy McIntosh, wife of the deceased, testified that she did not hear her husband and appellant arguing as she was feeling ill and spent most of the evening in the bedroom. She and her husband left the party shortly after the Guys did and went to the Guys' home. After arriving at the Guys' home, Mrs. McIntosh said that her husband told her the Guys had had an argument and "he was going in to see if he could settle things." She stated she remained in the car at first, but became cold and her husband came out and took her into the house. According to Mrs. McIntosh, appellant was knocking his wife about the room, and Mrs. Guy requested that she call the sheriff, which she did. Deceased asked the appellant to quit hitting Mrs. Guy, and appellant replied that it was none of his business. At that point she first noticed that appellant had a gun. She stated that appellant hit his wife several times with the gun, and when deceased, pleaded with him not to strike her again, appellant turned on the deceased and shot him three times, and that after deceased hit the floor, appellant shot him again.

The appellant's wife, Lois Guy, testified in his behalf. Her testimony substantiated the fact that there had been an argument between appellant and deceased at the Dunn's house. She stated that at one point in the evening she entered the kitchen and the deceased had a knife out and her husband was standing in a chair. She said she and her husband left about thirty minutes later. Her testimony was that appellant never struck her at the party, or at any time, on the night in question.

After leaving the party, the Guys returned home and began getting ready for bed. About that time, deceased walked in their house. Appellant asked him where his wife was and deceased went outside and brought his wife in from their car. According to Mrs. Guy, deceased then said, "All right, you son-of-a-bitch, let's take up where we left off." Mrs. Guy said she passed out at that point due to "low blood sugar." When she recovered, she said she observed that the deceased had appellant down on the floor and was twisting his leg. When she went to her husband's assistance, deceased struck her, rendering her unconscious again. When she regained consciousness, appellant was telephoning the police.

Appellant testified in his own behalf, his testimony substantially corroborating that of his wife. Appellant further testified that when deceased told him, "You son-of-a-bitch, let's take up where we left off," he (appellant) reached in a table to get his gun and put it in his pocket. When he was getting out of the chair, deceased struck him and the two men fell to the floor. Appellant testified that the deceased "ran his hand in his right front pocket and said, 'You son-of-a-bitch, I am going to kill you.'" When deceased made a lunge at him, appellant fired his pistol at deceased.

In the opinion of a State Toxicologist, Van Pruitt, death was caused by multiple gunshot wounds. The weapon which fired the fatal bullets, a thirty-eight caliber pistol, was identified as belonging to the appellant.

### I

Prior to trial defense counsel moved for the production of the following evidence:

"A scale drawing of the residence of Thomas L. Dunn, together with comparative sizes and locations of furniture, on the night that Kenneth McIntosh was killed."

Defense counsel entered said motion "for the purpose of preparing the defense," and stated that such evidence was within the State's possession, or that only the State had the financial capability to produce such evidence. Appellant now contends a denial of due process in the denial of such motion.

■■■ It is settled law that the suppression of evidence favorable to the accused upon request violates due process where the evidence is material. Brady v. State of Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. However, that principle is not applicable to the case at bar. There is no showing that the prosecution suppressed such evidence, or, indeed, any evidence for that matter, as nothing in the record indicates that the State had ever prepared such a scale drawing of the home or ever had possession of such evidence as was demanded by the appellant.

■ It is axiomatic that a defendant, whether indigent or otherwise, in a criminal case, is not entitled as a matter of right to require the State to prepare such demonstrative evidence as is here demanded to aid in preparing his defense. We hold therefore that the trial judge properly denied appellant's motion.

### II

■ During cross-examination of appellant's wife, the State questioned Mrs. Guy concerning statements allegedly made by her to Sheriff Buell Graves and Deputy Troy Henderson during their investigation of the incident on the night in question. These statements were in material conflict with her testimony at trial. Counsel for appellant argues in brief that the trial court erred in permitting the introduction of any conversation with the appellant's wife into evidence as she had not made an intelligent election to testify as required by Title 15, Section 311, Code of Alabama 1940; that Mrs. Guy's intoxication and general physical and emotional condition at that time precluded her making any intelligent and coherent statements.

In Eskridge v. State, 25 Ala. 30, we find:

". . . It does not follow necessarily, that because the party was much intoxicated his reason was so far dethroned as to disable him from comprehending the effect of his admissions, or from giving a true account of the occurrence to which they had reference. . . ."

However, we cannot here consider the merits of appellant's contentions as, so far as the record shows, there was no objection made by the appellant at the time of trial in relation to these aspects of the State's cross-examination of Mrs. Guy. No ruling of the trial court having been

invoked in this connection, no question is here presented for review. Coleman v. State, 22 Ala.App. 296, 115 So. 72.

### III

 State's exhibits, numbers two, three, and four, photographs of the victim's body, showing wounds inflicted by the appellant, were properly admitted in evidence. Wilson v. State, 31 Ala.App. 21, 11 So.2d 563, cert. den. 243 Ala. 671, 11 So.2d 568; Pope v. State, 39 Ala.App. 42, 96 So.2d 441, cert. den. 266 Ala. 699, 96 So.2d 447.

### IV

The trial court sustained the State's objection to the following question asked to deceased's wife on cross-examination: "Do you know the grounds of divorce in your husband's first divorce?" Such question was asked for impeachment purposes, the witness having previously testified that deceased had not been a violent man.

The trial court is vested with much discretion in matters of this sort. As stated in Vandiver v. State, 37 Ala.App. 526, 73 So.2d 566:

"It is a familiar rule of law that the range of cross-examination of a witness is within the sound discretion of the trial judge and his rulings will not be disturbed except for gross abuse of such discretion."

The witness had just admitted having previously sworn out a divorce complaint against her husband on the ground of physical cruelty and admitted having been beaten by him on at least one occasion. If credibility was at issue, it no doubt had already been seriously impaired. Considering all of the testimony, we do not feel that the appellant's right of cross-examination was prejudicially restricted. The ruling of the trial court will not be disturbed.

We have reviewed the entire record, as we are required to do by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. The judgment is therefore

Affirmed.

All the Judges concur.