STATE of Maine

v.

Charles EMERY.

Supreme Judicial Court of Maine.

May 9, 1973.

Joseph E. Brennan, County Atty., Donald G. Lowry, Asst. County Atty., Portland, for plaintiff.

Jack L. Schwartz, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On the evening of July 29, 1971, at about 8:00 p. m., in the Town of Standish, Maine, one Harold E. Gallant, while tending his small antique business shop, was approached by a male person whom he later identified as the defendant. This person, according to Mr. Gallant's testimony, had a cash register in used condition which he wanted to sell and purportedly had in the automobile parked in the Gallant driveway at the time. It was then daylight and, after some conversation lasting about three minutes, the man, convinced of Mr. Gallant's disinterest in purchasing that type of merchandise, returned to the car and departed with a companion-driver. About one hour later, the same person, so Mr. Gallant testified, reappeared, but, since the store was then closed, he was received on the porch leading to the home part of the building. It was then dusk, but they conversed for some ten minutes under an electric light bulb of probably 100 watts. This time the man had a holster and pistol to sell, for which he was asking $10.00. Again, Mr. Gallant expressed a lack of interest, but, on the individual's insistence, he did take the holster and gun in hand, made a thorough inspection of the gun and finally offered to give $5.00 for the goods. This was accepted. Reaching into his left rear pocket, Mr. Gallant took out his wallet, when his face was sprayed with a substance stated in testimony to be like tear gas and his wallet, containing some four hundred dollars, was snatched from his hand. A minor scuffle ensued during which Mr. Gallant threw his body against the door that had slammed against the man's wrist, but to no avail. The robber escaped in the waiting car.

Shortly after the robbery, the authorities were at the Gallant place to investigate. In search for fingerprints, the deputy sheriff was only able to lift from the door jamb streaks too badly blurred to obtain useable prints. Offered the holster and gun, he examined them, but made no attempt to obtain fingerprints. His explanation was that the dull leather of the holster, with its rough and scuffed surface, presented no appropriate spot where a test for fingerprints would be feasible, and the carved checkered-pattern criss-cross lines of the gun's wooden handle would prevent

fingerprint adherence. Informed by Mr. Gallant as to his own handling of the gun when he examined it for purchase, the deputy did not check the metal part for prints, stating at subsequent hearing he felt, at the time of investigation, that Mr. Gallant's handling of the gun would have ruined any prints that might have been on it. The officer made note of the serial number of the gun, but left both the holster and the gun with Mr. Gallant, in whose possession they remained from the day of the robbery to the time of trial. They were not introduced as evidence, neither by the State nor the defendant. The good faith of the officer is not questioned.

### 1. *Suppression of evidence*

Convicted by jury of the crime of robbery under 17 M.R.S.A., § 3401, the defendant seeks to have the conviction set aside for claimed prejudicial error in the denial of his pretrial motion for discovery under Rule 16(a) of the Maine Rules of Criminal Procedure. In this motion dated January 6, 1972 the Court below was asked to order the State to obtain the gun and holster from Mr. Gallant and "cause them to be inspected for any possible evidence which may help to shed some light on the guilt or innocence of the Defendant." The parties have stipuated that, at all times material, the defendant was indigent and the gun and holster were in the possession of Mr. Gallant and not in the possession of the authorities. The defendant contends that, if laboratory tests for fingerprints had been run on the gun and holster, these might possibly have disclosed prints of unidentified persons, and, if so, such evidence would have bolstered his alibi by tending to prove that the gun and holster had been offered for sale to Mr. Gallant by some person other than himself. The defendant at trial did offer alibi evidence from himself, his sister and a friend, which evidence was obviously rejected by the jury.

■ Under Rule 16(a), M.R.Crim.P., it is provided:

"Upon timely motion of a defendant and *upon a showing that the items sought may be material to the preparation of his defense* and that the request is reasonable, *the court shall order the prosecuting attorney to permit the defendant to inspect* and copy or photograph designated books, papers, documents, or *tangible objects which are within the possession, custody, or control of the state, including * * * the results or reports of physical examinations and scientific tests, experiments, and comparisons.* The order shall specify the time, place, and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just." (Emphasis added.)

If the gun and holster, at the time the motion for discovery was made, were in the possession, custody and control of the State, we are satisfied that, under the liberal interpretation and application to be accorded Rule 16(a), M.R.Crim.P. and notwithstanding the State's claim, if made, that the requested laboratory tests would be an exercise in futility, nonetheless, the defendant would have been entitled to an order of the court permitting such tests to be made under such safeguards as the court deemed just and reasonable to protect the evidence and its return to court. See, State v. Cloutier, 1973, Me., 302 A.2d 84; Maine Practice, Glassman, Commentary § 16.3. Because the State has, or can easily secure, the services of scientists and technicians to conduct scientific tests and experiments, which advantage is hardly available to indigent defendants, it is only fair that discovery under Rule 16(a), M.R.Crim.P. should make it possible for indigent defendants to have the same opportunity concerning evidence within the possession, custody, or control of the State. Where in the instant case, the evidence (gun and holster) was not "within the possession, custody, or control of the state," the denial of the defendant's motion was clearly correct. Shaw v. Robbins, D.C. 1972, 338 F.Supp. 756.

In State v. Toppi, 1971, Me., 275 A.2d 805, we said that the ruling of the Court below was proper, since there was no showing the requested criminal records were within the possession, custody or control of the State. However, in a footnote, we indicated that, where the witness had lived in many places, the defendants were indigent and the witness was known by the State to be its principal witness, the State should have been ordered to make the necessary investigation on behalf of the defendants, but we saw no error, since counsel had in fact obtained the information and had used the same at the trial. This comment was undoubtedly occasioned by the fact that the State has the ability readily to secure such evidence as criminal records of State's witnesses, whilst such records usually are not easily obtainable by counsel for indigents. A gun and holster in private ownership and possession are not to be compared to criminal records in possession of governmental authorities.

However, the defendant contends that, notwithstanding the fact Rule 16(a), M.R. Crim.P. limits its operation to cases in which the tangible objects or other things sought to be discovered are within the possession, custody, or control of the State, there is an affirmative duty on the prosecuting attorneys representing the State to assist the defendant in presenting the truth at trial, and, in the discharge of that duty, prosecuting officials must, not only disclose evidence materially favorable to the defendant, but help in obtaining the same. He argues that the denial of his motion was tantamount to suppression of evidence material to his defense of alibi and a denial of due process. We disagree.

This Court did say, in State v. Wood, 1928, 127 Me. 197, 142 A. 728:

"A trial before a jury is an investigation of matters of fact, its sole purpose being to ascertain the truth. All competent evidence tending toward that result should be produced. It is the plain duty of prosecuting officers to make every ef-fort to present all of the facts and to assist the respondent in his effort to do the same."

The Court, however, did not intend by this statement to cast the duty on the prosecution to furnish the defendant with evidence which it does not have in possession, custody or under its control, nor to compel it to undertake the investigatory functions of defense counsel. There was no affirmative duty on the prosecution in the instant case to seek out the gun and holster from Mr. Gallant for the purpose of having tests made thereon for fingerprints in the light of the officer's good-faith opinion that such tests would be negative under the circumstances.

We are mindful of Peoples v. Hocker, 1970, 9 Cir., 423 F.2d 960, in which defendant's murder conviction was upheld on appeal against Peoples' contention that police failure to conduct fingerprint, paraffin and other ballistic tests to determine whether the victim had not shot herself amounted to suppression of evidence and a denial of due process. After recognizing that "[i]t would be an exceedingly delicate task to endeavor to establish criteria to tell when a certain quantum of police investigation constitutes due process and when it does not," the Court went on to say that "better investigation would have been helpful to the jury. But * * * the investigation was not so poor as to amount to a deprivation of due process, much less a suppression of evidence such as there was in Brady v. Maryland, 1963, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215."

The officer's failure to perform at the scene of the robbery tests for fingerprint detection upon the gun and holster, their immediate release to the owner without closer laboratory examination, the prosecution's refusal to retrieve these tangible objects for such scientific experiments upon pre-trial request, the Court's denial of the defendant's motion for assistance in obtaining the evidentiary matter for further expert analysis, none, whether singly or in

combination, constituted an invidious deprivation of due process or an unconstitutional suppression of evidence in violation of the *Brady* rule.

The *Brady* Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 1963, 373 U.S. 83, at 87, 83 S.Ct. 1194, at 1196–1197. Whether the nondisclosure is the result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it represents the Government. Giglio v. United States, 1972, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104. The law enforcement officers are part of the prosecution, and the taint on the trial is no less if they, rather than the prosecuting attorney, are guilty of the nondisclosure. Barbee v. Warden, Maryland Penitentiary, 1964, 4 Cir., 331 F.2d 842; Curran v. State of Delaware, 1958, 3 Cir., 259 F.2d 707, cert. denied, 358 U.S. 948, 79 S.Ct. 355, 3 L.Ed. 2d 353. See, Pyle v. Kansas, 1942, 317 U. S. 213, 63 S.Ct. 177, 87 L.Ed. 214.

The standards by which the prosecution's conduct is to be measured under the *Brady* rule are as follows: there must be (a) a suppression by the prosecution after a request by the defense, (b) the evidence must be favorable to the defense, and (c) it must be material. Moore v. Illinois, 1972, 408 U.S. 786, 92 S.Ct. 2562, at 2568, 33 L. Ed.2d 706.

■ We conclude that there was no unconstitutional suppression of the gun and holster for several reasons. First, the defendant was fully aware that these items had remained, and were, in the possession of the owner at all times, that they never were in the possession of the prosecution, and that no fingerprint tests had been conducted upon them. Possession by the State is an all important basis upon which a claim of violation of due process by reason

of suppression of evidence must be founded, absent extraordinary circumstances. Rule 16(a) so requires and Justice Fortas, in his concurring opinion in Giles v. State of Maryland, 1967, 386 U.S. 66, 87 S.Ct. 793, at 810, 17 L.Ed.2d 737, expressed the *Brady* rule in these terms: "If it [the State] has in its *exclusive possession* specific, concrete evidence which is not merely cumulative or embellishing and which may exonerate the defendant or be of material importance to the defense—regardless of whether it relates to testimony which the State has caused to be given at the trial—the State is obliged to bring it to the attention of the court and the defense" (Emphasis ours.) *Brady* does not impose on the prosecution a general duty to help find witnesses or evidence possibly favorable to the defendant. See, United States v. Gonzalez, 1972, 5 Cir., 466 F.2d 1286.

Where the record indicates that the gun and holster were not in the possession of the prosecution, the defendant has failed to bring himself within the perimeter of the *Brady* rule. See, United States v. Valenzuela-Mendoza, 1971, 9 Cir., 452 F.2d 773; Guy v. State, 1972, 48 Ala.App. 293, 264 So.2d 214..

■ Secondly, the appellant had the burden of proof to show that he was aggrieved by the refusal of the Court below to grant his request. In the circumstance of this case, however, the only evidence in the record is to the effect that it was not possible to raise satisfactory fingerprints from the gun or holster. Evidence neutral in character or as to which no showing is made respecting its probable beneficial assistance to a defendant's defense is not the type of evidence the suppression of which would violate the due process guarantees of Brady. See, Bergenthal v. Cady, 1972, 7 Cir., 466 F.2d 635, cert. denied, 409 U.S. 1109, 93 S.Ct. 913, 34 L.Ed.2d 690.

■ Thirdly, the evidence allegedly suppressed must be shown to be material, i. e. clearly relevant and helpful to the defense

and having a tendency to exonerate the accused by reason of its probative effect upon important issues in the case, whether of facts or credibility of witnesses. The State, however, has no constitutional duty to exhaust all scientific means available in collecting evidence. In People v. Baber, 1971, 31 Mich.App. 106, 187 N.W.2d 508, failure of the police to check footprints in the snow, to test a gun found at the scene of the crime for fingerprints, to check a broken window and screen for fibers of clothing or otherwise take fingerprints in the house was viewed as not giving rise to a valid constitutional claim of denial of due process.

■ Furthermore, the State cannot be charged with suppression of tangible objects which were not in the State's possession and which were within the legal reach of the defendant himself. Under Rule 17(b), M.R.Crim.P. an indigent defendant, upon a written ex parte application of himself or his counsel may obtain from the court or a justice thereof an order for the issuance of a subpoena to be served on a named witness, the fees for the witness and his mileage together with the cost of the service of the process to be paid in the same manner as similar fees and costs are paid in the case of witnesses subpoenaed on behalf of the State. Rule 17(c) permits subpoenas duces tecum for the production of objects at trial and also "before the court at a time prior to the trial or prior to the time when they are to be offered in evidence." The rule further provides that the court may upon their production permit these objects to be inspected by the parties and their attorneys. Although Rule 17(b), which purports to be applicable to indigent defendants, does not expressly encompass subpoenas duces tecum provided for in Rule 17(c), we hold that it was the intent of the rule-makers to provide an all-inclusive comprehensive rule relating to the issuance of subpoenas in the criminal sector and that Rule 17(b) must be interpreted as if Rule 17(c) had been expressly incorporated therein. With this rule mechanism

at his disposal, the defendant, with the cooperation of the Court, could have secured the gun and holster before the court for inspection and thereafter obtained upon request the services of an expert witness for further examination or experiment.

We find no violation of the defendant's due process rights by reason of any alleged suppression of evidence by the State, nor any abuse of judicial discretion in the lower Court's denial of the so-called discovery motion.

### 2. Validity of in-court identification

The next contention is that Mr. Gallant's in-court identification over the defendant's objection was in violation of the defendant's due process rights, because it was tainted by an earlier out-of-court identification. Again, we disagree.

■ At trial below, the argument was that at the earlier out-of-court identification there was no attorney present at the lineup representing the defendant to observe the fairness under which the identification was being conducted. Reliance was being placed upon United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 and Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178. Since the trial below, the United States Supreme Court in Kirby v. Illinois, 1972, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, and this Court in State v. Boyd, 1972, Me., 294 A.2d 459 and in State v. Northup, Me., 1973, 303 A.2d 1, have now settled the issue that a lineup conducted prior to the bringing of formal criminal charges is not a critical stage of the prosecution at which the Sixth Amendment right to counsel applies.

■ Furthermore, the pre-trial lineup at which the defendant was confronted with the victim in no way violated the Due Process Clause of the Fourteenth Amendment. In the totality of the circumstances surrounding the lineup the confrontation was not unnecessarily suggestive nor con-

ducive to irreparable mistaken identification. It satisfied the substantive protections under the Due Process Clause. See, Stovall v. Denno, 1967, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199. Indeed, the record before the Court taken in the absence of the jury reveals that the defendant was in custody in the county jail charged with an unrelated offense, and that Mr. Gallant was asked by the investigating officer to come to the jail and view a man "that fits somewheres (sic) the description." This was some four days following the robbery. At the jail he was directed to view four men in a wire enclosed area under very good lighting conditions. Three of the men were bare to the waist while the other (not the defendant) had a shirt on. The defendant was dressed in the same way as two of the three other persons in the enclosure and in civilian clothes. The person whose clothing was noticeably different from the others was not the defendant. There was no suggestion to Mr. Gallant by the officers that they suspected any particular person in that group. He identified the defendant as the robber, even though the defendant did not have a beard such as the robber had on the evening of the robbery. The ruling of the Justice below that the lineup identification procedure was conducted fairly and without violation of the defendant's due process rights is fully supported by the record and the defendant's contention that the in-court identification was inadmissible for unconstitutional taint from pre-trial lineup identification is without merit.

■ Moreover, the in-court identification was made under ground rules suggested by the defendant. At his request, the defendant was permitted to be seated with the spectators until the identification was made. Mr. Gallant, stepping down from the witness box and going around the courtroom, identified the defendant as the robber—"that man, the second one in from the back (pointing)—." The Court then in the absence of the jury indicated for the record, with no objections by the defend-

ant, that "in the area where the defendant was seated at the time he was identified were five other males, approximately in their 20's or 30's, of general build and size descriptions." Thus, the totality of the record, which shows that Mr. Gallant had the opportunity to see the robber on two occasions on the night of July 29, 1971 under very favorable conditions for a combined period of observation of more than ten minutes, when viewed in the light of the in-court identification of Mr. Emery amongst the spectators, demonstrates that Mr. Gallant's in-court identification was based on a source independent from the pre-trial lineup identification and would have sustained its admissibility in evidence even if the pre-trial identification had been improperly conducted.

### 3. Failure to give Miranda warning

The investigating officer admitted that, at the time of the pre-trial lineup identification, he had information from the Sanford Police that the defendant had an abrasion on the back of his left wrist and that his interest in viewing the four persons in the lineup was to verify the defendant's alleged bruise which would support the victim's description of the robber's escape to the effect that the door had slammed upon the felon's left wrist when Mr. Gallant had thrown his body against the door. The officer was permitted to testify at trial, over the defendant's objection, respecting his observation of the defendant's left wrist bruise made at the pre-trial lineup.

■ Failure to give the Miranda warning to the defendant prior to the officer's viewing of Mr. Emery's left wrist at the pretrial lineup did not constitute a violation of Fifth Amendment rights against compulsory self-incrimination. A defendant may be compelled to display identifiable physical characteristics, such as in the instant case to expose his bruised wrist, and such investigative procedures for evidentiary identification purposes infringe no

interest protected by the privilege against compulsory self-incrimination. Compelled use of an accused's body as "real or physical evidence" when material is outside the protection of the Fifth Amendment the scope of which relates only to testimonial or communicative acts on the part of the person to whom the privilege applies. Schmerber v. State of California, 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; Warden, Maryland Penitentiary v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed. 2d 782; United States v. Dionisio, 1973, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67; State v. Poulin, 1970, Me., 268 A.2d 475; State v. Stevens, 1969, Me., 252 A.2d 58.

The defendant has raised other points of alleged error which we have considered. We have read the record with care and find no reversible error. The trial was fair and the conviction resulted from the judgment of the jury who were convinced beyond a reasonable doubt that the defendant was guilty as charged.

The entry will be

Appeal denied.

All Justices concurring.

POMEROY and WERNICK, JJ., did not sit.