307 So.2d 723

**John William McCLENDON**

**v.**

**STATE.**

**8 Div. 595.**

Court of Criminal Appeals of Alabama.

Feb. 4, 1975.

Culver & Miller, Huntsville, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State, appellee.

TYSON, Judge.

The appellant was indicted for the first degree murder of Earl Wherry "by shooting him with a pistol." At trial the Jury found the appellant guilty of murder in the

second degree and fixed punishment at seventeen years imprisonment. The trial court then pronounced judgment, setting sentence in accordance with this verdict.

Vann Pruitt, Jr. testified that he was State Toxicologist and received notice, on February 16, 1974, of the death of Earl Wherry. He testified that he examined this body on February 17, and found three separate gunshot wounds in the body from .22 caliber bullets, that one of these projectiles had struck the heart and was the cause of death.

Carolyn Smith testified that she was a student nurse in the City of Huntsville when, on Saturday evening, February 16, 1974, she was a witness to a shooting shortly after 5:00 p. m. at the intersection of Washington and Holmes Streets. She testified that she saw the appellant walk up to the deceased and engage him in conversation. She testified that she did not see the deceased raise his hands at the appellant, but that he was bending over, that she saw the appellant grab the deceased by the shoulder, and she saw the appellant pull a pistol from his pocket. From the record:

"Q. All right. Were you looking at the Defendant when he drew this gun?

"A. I could see him.

"Q. Do you know where he got the gun?

"A. No.

"Q. All right. Did he already have it drawn when you saw the firing?

"A. I seen him lift his hand and fire.

"Q. You saw what?

"A. I saw him lift his hand and fire.

"Q. You saw him lift his hand and fire it?

"A. Yes.

"Q. In relation, ma'am, in feet and inches, how far was Earl B. Wherry from the Defendant when the Defendant shot him?

"A. I guess maybe about a foot from him."

Miss Smith testified she saw the deceased fall, that she was not certain how many shots she heard, and that the appellant then turned and walked on down the street. She stated several persons gathered around, that she observed blood, that one of the men turned the victim over, and that she saw no weapon lying there.

Lawrence Grover testified that he was a student in his senior year of college and was twenty-one years of age. He testified that on the late afternoon of February 16, 1974, he observed a shooting at the intersection of Washington and Holmes Streets in the City of Huntsville. He testified that he had been to Lewter Hardware Store, which was approximately a block from the intersection in question. He stated that he passed the deceased, Earl Wherry, and spoke to him, that a few minutes thereafter he saw the appellant come up to the deceased and ask him for some money. From the record:

"Q. He did what?

"A. He came up to Mr. Wherry and asked him for some money and Mr. Wherry said he didn't have any money. So he told him, he said, 'Every time I see you you don't have any money.' Then Mr. Wherry told him, said, 'Why don't you go on down the street before we get into some trouble.' Then Mr. Wherry turned around and started talking to me, about that time he had reached into his front pocket, his right front pocket.

"Q. Who did?

"A. The Defendant.

"Q. He reached into his right front pocket?

"A. That's right.

"Q. What did he do?

"A. He pulled out a gun and he asked him, he said, when he pulled out his gun he asked him, he said, 'Now, will we still

get into trouble,' and Mr. Wherry looked at him, then, I guess he thought he was playing or something.

"MR. CULVER: We object to what he thought.

"THE COURT: Sustained.

"MR. CULVER: Ask that be excluded.

"THE COURT: Ladies and gentlemen of the jury, disregard what someone might have thought, someone else thought.

"Q. Let me ask you this: Was Mr. Wherry facing you at this time or was he facing the Defendant?

"A. At the time the gun was pulled?

"Q. Right.

"A. He was facing me.

"Q. At the time the gun was fired he was facing you?

"A. Not when it was fired, but when it was pulled, when he was pulling it.

"Q. And what happened?

"A. He asked him, he said, 'Now, will we still be getting into it.'

"Q. Then what happened?

"A. Mr. Wherry just stood there awhile and he said, 'It don't make any difference,' and when he said that he shot at least three time, maybe more.

"Q. He shot three times. Did you at any time see the deceased strike Mr. —

"A. No, there was nobody contact at all.

"Q. Nobody contact?

"A. There wasn't."

Grover stated that he heard three shots and heard the appellant state: "He must didn't know I would kill him." He further stated that he heard somebody call the police, and that he later saw Carolyn Smith standing at the scene when the police arrived.

On cross-examination he testified that the deceased spoke with a naturally slurred tone, but that he could not detect alcohol about the person of the deceased. He also stated that he heard the deceased state to the appellant, "Why don't you go on down the street before we get into trouble."

Huntsville Police Detective Perry Petty testified that he saw the appellant between 7:30 and 8:00 on the evening of February 16, 1974, at Police Headquarters. He testified that Sergeants Otman and Brooks were present when he read the appellant a "Miranda Card" warning.

The trial court properly here excused the jury during the laying of the predicate under Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908; Duncan v. State, 278 Ala. 145, 176 So.2d 840; and Smith v. State, 282 Ala. 268, 210 So.2d 826.

From the record:

"Q. All right. The card that you have in your right hand, is that the card that you read to the Defendant on that occasion?

"A. Yes, sir.

"Q. And if you would, read that into the record and to the jury, please.

"A. 'You have the right to remain silent. If you choose to talk, you may stop talking at any time. Anything you say can and will be used against you in a Court of law. You have the right to talk to a lawyer of your own choosing or with anyone else, and you may have your counsel present during any statement—during any questioning or during any statement you may make. If you cannot afford an attorney, one will be appointed for you free of charge before any questioning. Do you understand each of these rights just stated to you?'

"Q. All right. Detective Petty, did he at this time acknowledge that he understood those rights?

"A. Yes, sir.

"Q. And how did he do that?

"A. 'Yes.'

"Q. He said, 'Yes,' he did?

"A. Yes.

"Q. Now, did you promise him any reward if he would make a statement to you then?

"A. No, sir.

"Q. Did you threaten him, beat him, or any way coerce him into making a statement to you at this time?

"A. No, sir.

"Q. Did anybody in your presence threaten, coerce or promise a reward to this Defendant if he would make a statement to you?

"A. No, sir.

"Q. Did you at this time submit a question to the Defendant?

"A. Yes, sir.

"Q. And what was that question?

"A. I asked him why he shot the deceased.

"Q. All right. And did he make a response to that?

"A. Yes, sir.

"Q. And what was that response?

"A. He said, 'I'm tired of these m_____-f_____ f_____ over me.'

"Q. All right. He's tired of these people f_____ over him, is that correct?

"A. Yes, sir.

"Q. And did he make any other statements then?

"A. I asked him what he meant by these people f_____ over him.

"Q. All right. What, if anything, did he say then?

"A. He started referring to—

"MR. CULVER: Your Honor, we object to the narration of what he said.

"THE COURT: Sustained. State what he said.

"Q. Just what he said, Detective Petty.

"A. The exact words I don't remember.

"Q. All right. As best you can recall the words that he used.

"A. This man had shot him about a year ago.

"Q. Did he say where?

"A. Up on Jefferson Street.

"Q. All right. And that was the reason that he had shot this man, is that correct?

"MR. CULVER: We object to that.

"THE COURT: Sustained.

"Q. What, if anything, else did he say?

"A. I asked him what he had done with the weapon.

"Q. All right. What did he say?

"A. He had put it in the alley off of Holmes.

"Q. All right. Did you in fact go to this alley on Holmes?

"A. Yes, sir.

"Q. Did you find a weapon in this alley?

"A. No, sir.

"Q. Did you find a weapon or have you found a weapon in regard to this case either on the Defendant or anywhere?

"A. No, sir."

The defendant recalled Vann Pruitt, Jr. to the stand, and he testified that he found 0.24 percent ethyl alcohol by volume in the bloodstream of the deceased, that, in his

judgment, a person's coordination or skill would be impaired with that content.

The appellant took the stand in his own behalf and admitted two convictions for burglary and grand larceny in the 1950's, but that since 1958 he had been arrested only once for robbery but was excused of it, and that the only other charges against him were for public drunkenness. He testified that he had been employed by Goodwill Industries in Huntsville prior to the date of the shooting, which occurred on February 16, 1974. He testified that about two months prior to this date he had loaned the deceased, Earl Wherry, $10.00. He testified that he had twice seen the deceased and asked that he repay the money, and that the deceased claimed he did not have it. He testified that on February 16, 1974, he encountered the deceased coming from a poolroom and bar on Holmes Street, and asked him, "How about that little bit you owe me?" He stated that the deceased got offended and replied, "I am in a bad mood, I will do something to you." He stated that the deceased started toward him, that he took his hand and pushed him back, then pulled a .22 caliber pistol, which he was carrying, and fired three times in the direction of the deceased. He stated he was not certain that he hit the deceased with each shot. The appellant admitted that about an hour before encountering the deceased, he had gone to the whiskey store and bought something to drink.

On cross-examination the appellant admitted his conviction on December 3, 1952, of burglary and grand larceny, and also on March 2, 1955, for the same offense. He was also cross-examined about the arrest for robbery on October 20, 1970, and about some charges for public drunkenness.

He testified that he had taken the pistol to a pawn shop that day to be worked on, but found that the shop was closed. He stated that he encountered the deceased somewhere around 5:00 p. m. on February 16, 1974.

I

■ The appellant contends that the trial court erroneously admitted into evidence the statement given by him to Detective Petty on the evening of his arrest between 7:30 and 8:00 p. m. at Police Headquarters. As may be seen here, the trial court first excused the jury, and then determined that the statement was voluntary. Thereafter the State laid both the pre-Miranda and the Miranda predicate before the appellant's statement was admitted into evidence. The applicable criteria for questioning the suspect by law enforcement officers is ably stated by Mr. Justice Lawson in Phillips v. State, 248 Ala. 510, 28 So.2d 542, as follows:

"The questioning of a suspect while in the custody of law enforcement officers is not prohibited either by the common law or by the Fourteenth Amendment, nor is a confession rendered inadmissible solely by virtue of the fact that it was made while the accused was in the custody of such officers. Ziang Sung Wan v. United States, 266 U.S. 1, 14, 45 S.Ct. 1, 69 L.Ed. 131; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140; Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481. Under the decisions of this court the fact that a confession is made while the maker is under arrest does not render it inadmissible. Johnson v. State, 242 Ala. 278, 5 So.2d 632; Dyer v. State, 241 Ala. 679, 4 So.2d 311; Stone v. State, 208 Ala. 50, 93 So. 706; Curry v. State, supra [203 Ala. 239, 82 So. 489]; Redd v. State, 69 Ala. 255. Nor is the confession rendered inadmissible merely by virtue of the fact that the officers to whom the confession was made were armed. McElroy v. State, 75 Ala. 9; Hornsby v. State, 94 Ala. 55, 10 So. 522; Flanigan v. State, 247 Ala. 642, 25 So.2d 685. The evidence for the State shows that the officers did not intimidate the appellant in any way and

that as police officers they were required to be armed when on duty.

"The fact that appellant was asked if he wanted to tell the truth about the death of Louie does not affect the admissibility of the confession. Redd v. State, supra; King v. State, 40 Ala. 314; Beaird v. State, 215 Ala. 27, 109 So. 161."

■ In Taylor v. State, 31 Ala.App. 590, 20 So.2d 239, former Presiding Judge Carr observed:

"The test of the relevancy of evidence [in criminal cases] is whether it 'conduces to the proof of a pertinent hypothesis; a pertinent hypothesis being one, which if sustained, would logically influence the issue.' Whitaker v. State, 106 Ala. 30, 17 So. 456."

■ We do not agree with the appellant's suggestion that the statement here refers to other offenses involving the appellant, and, hence, should not have been admitted in evidence. As noted by former Presiding Judge Carr in Taylor v. State, supra, we are of the opinion that the statement taken in its entirety includes the voluntary acknowledgment of the guilt of the accused of the offense charged, and no part of it should have been taken from the consideration of the jury. *Taylor*, supra, and cases therein cited.

■ Former acts of hostility between the accused and the victim are admissible for the purpose of showing motive or malice. Hill v. State, 51 Ala.App. 515, 286 So.2d 924, and cases cited therein.

II

■ Appellant next contends that the trial court erroneously allowed the State to ask the appellant about prior arrests and charges of a serious nature on cross-examination.

On direct examination, appellant's attorney asked the following:

"Q. Have you been back to prison since then?

"A. No, sir.

"Q. Have you been arrested for any crime since then?

"A. No.

"Q. Since 1958?

"A. No.

"Q. Have you been arrested for public drunkenness since then?

"A. Oh, yeah, sure.

"Q. But you've not been arrested for any crime which you could be sent back to prison?

"A. No.

"Q. You were arrested for robbery, were you not?

"A. Well, I was excused of it."

The District Attorney's cross-examination on this is as follows:

"Q. Were you arrested October 20th, 1970, for robbery?

"A. For robbery.

"Q. Robbery?

"A. I was excused. The victim, he didn't really know what happened, that was something he said happened. I mean, the guy I was supposed to rob, he really didn't know who did it, I mean it was just something I said.

"Q. Was he drinking too?

"A. I guess he was.

"Q. He was drinking?

"A. I guess he was known to be a drunk at the time.

"Q. Did you in fact receive a sentence for that particular charge?

"MR. CULVER: We object to receiving sentence.

"THE COURT: Sustained.

"Q. Mr. McClendon, you were arrested for a serious charge after 1958, then?

"MR. CULVER: Your Honor, I know that I went into it but I think he's got to show convictions and not what he was arrested for.

"THE COURT: Sustained.

"Q. Your attorney said you had in fact been arrested for public drunkenness maybe once or twice?

"A. Sure.

"Q. Could it have been more than that?

"A. Not too many, two or three times, maybe, something like that.

"Q. Are there any other charges of a serious nature which you have been charged and found guilty that I have not mentioned?

"A. No, sir."

As may be seen, appellant's counsel first injected the matter of the arrests and serious offenses, including public drunkenness, into evidence, hence, the trial court properly allowed the appellant to be cross-examined on this. Moreover, there was no objection or exception as to the questioning pertaining to the appellant's arrest for robbery on October 20, 1970. Since there was no objection by the appellant, and the matter had previously been injected into evidence by the appellant's own attorney, such was a proper basis for cross-examination. No ruling of the trial court being invoked in this connection, no question is here presented for review. Guy v. State, 48 Ala.App. 293, 264 So.2d 214, and authorities therein cited; Dean v. State, 1975, 54 Ala.App. ——, 307 So.2d 77, and cases therein cited.

■ Moreover, the appellant's negative answer as to the question pertaining to charges of a serious nature rendered such harmless. Rule 45, Revised Rules of Practice, Supreme Court of Alabama, Title 7, Appendix.

### III

Appellant calls our attention to the closing argument of counsel, wherein the following occurred:

"MR. CULVER: We object, ask that be excluded. There's no record in this County or anywhere else that this man has been guilty of robbery. We ask for a mistrial at this time.

"THE COURT: Overruled."

■ As shown above, appellant's counsel failed to have the court reporter recite the remarks of the Assistant District Attorney, which he here seeks to have reviewed. Such fragmentary objection, as shown above, does not meet the requirements of the authorities which necessitates that the record disclose the objectionable argument of counsel, the exception thereto, and the trial court's ruling. McClary v. State, 291 Ala. 481, 282 So.2d 384.

Moreover, appellant's counsel had originally placed in evidence the matter of his arrest, on October 20, 1970, for robbery, on direct examination [R. p. 107], hence, the trial court properly allowed the appellant to be cross-examined on this [R. p. 121]. We are therefore of the opinion that the trial court properly overruled the appellant's motion for a mistrial, as above noted.

We have carefully examined the trial court's oral charge, and other rulings, and find same to be free from error. The judgment appealed from is hereby

Affirmed.

All the Judges concur.