Assault with intent to murder; sentence: fifteen years imprisonment.
On Sunday, September 12, 1976, at about 2:00 p.m., Charles Williams and Rev. Joe Taylor were engaged in a conversation in front of Williams' residence. Taylor was seated in his automobile, and Williams was standing by the driver's side. They had attended church that morning and had just returned from visiting someone in the hospital. As they were talking, Taylor noticed in the rear view mirror that someone was running toward the apartments located next door to Williams' residence. Taylor asked Williams who that person was, and Williams identified him as the appellant. Williams had rented an apartment to the appellant in the building that appellant was running toward.
A few minutes later, the appellant walked up where Williams and Taylor were talking and grabbed Williams by the neck from behind. The appellant pulled a knife from under his belt, and Williams broke away and ran. Appellant gave chase, caught Williams, and stabbed him in the back breaking the blade of the knife off while it was in Williams. At this point, Taylor grabbed a pistol from under his seat, jumped out of his automobile, and ran over to Williams and appellant. Taylor knocked appellant off Williams and held him at gun point until the police arrived.
The appellant testified at trial that he stabbed Williams with a knife. He testified that Williams and Taylor tried to put a choir robe on him against his will and that he was defending himself against a spiritual movement.
 I
Appellant's first contention is that he did not knowingly and intelligently *Page 714 
waive his right against self-incrimination when he took the witness stand and testified in his own defense. Appellant claims that he was unaware that he was waiving his right against self-incrimination and that neither the court nor appellant's trial counsel adequately advised appellant.
We have reviewed the record and find that appellant's trial counsel did advise him of his right not to testify. Likewise, the trial court made certain that the appellant knew what he was doing in taking the witness stand.
In Torcia, Wharton's Criminal Procedure, § 396, (12th ed., 1975), at 37, it is stated:
 "Absent an applicable statute providing otherwise, neither the trial judge nor the prosecuting attorney is required to warn a witness or the defendant of his privilege against self-incrimination, except that the trial judge may in his discretion impart such a warning. However, where the defendant is not represented by counsel, the trial judge is ordinarily required to inform him of his right not to take the stand." (Footnotes omitted.)
We are unaware of any Alabama statute requiring the trial court to warn the defendant of his privilege against self-incrimination.
The appellant chose to testify of his own free will. By voluntarily taking the witness stand and testifying, appellant waived his constitutional shield against self-incrimination.Willingham v. State, 50 Ala. App. 363, 279 So.2d 534 (1973), cert. denied, 291 Ala. 803, 279 So.2d 538; Lipscomb v. State,32 Ala. App. 623, 29 So.2d 145 (1947); Article I, § 6, Constitution of Alabama 1901; Title 15, § 305, Code of Ala. 1940 [now § 12-21-220, Code of Ala. 1975].
 II
Appellant's counsel also contends that appellant did not have the mental capacity to knowingly and intelligently waive his right against self-incrimination because he was committed to Bryce State Mental Hospital approximately forty days after the trial.
It is a violation of due process to try an accused while he is incompetent. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836,15 L.Ed.2d 815 (1966); Davis v. State, Ala.Cr.App.,354 So.2d 334 (1978). In the present case, appellant was committed to Bryce Hospital after trial pursuant to Title 15, § 428, Code of Ala. 1940 [now § 15-16-20, Code of Ala. 1975]. As stated inTillis v. State, 292 Ala. 521, 296 So.2d 892 (1974):
 ". . . In actuality, § 428 itself is not directed to the competency of the defendant to stand trial, but whether he should be transferred from jail to a state hospital for treatment. Lee v. Alabama, 386 F.2d 97
(5th Cir., 1967). This is a humanitarian consideration which has nothing to do with due process per se. . . ."
Appellant testified that in 1976 he was committed to a mental institution in Mississippi by his father for observation. He was released after fourteen days. This is not evidence of present insanity. There was no evidence presented to indicate that appellant was insane at the time of his trial. A plea of not guilty by reason of insanity was never entered, nor was there any request for a competency hearing. The question of appellant's sanity was not raised at trial. Under Alabama law, every person is presumed to be sane. Title 15, § 422, Code of Ala. 1940, (now § 15-16-2, Code of Ala. 1975). Nothing was shown either before or during trial to rebut that presumption.
The standard concerning a defendant's capacity to stand trial is stated in Dusky v. United States, 362 U.S. 402,80 S.Ct. 788, 4 L.Ed.2d 824 (1960):
 ". . . [T]he `test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'"
That standard was adopted in this state in Edgerson v. State,53 Ala. App. 581, 302 So.2d 556 (1974). In Lee v. Alabama,406 F.2d 466 (5th Cir., 1969), it was stated:
 ". . . [O]ne may be suffering from a mental disease which is at the root of *Page 715 
antisocial action and simultaneously have a rational and factual understanding of court proceedings and be able to consult with a lawyer on a reasonably rational basis. . . ." (Citations omitted.)
From the record it is clear that appellant understood the nature of the proceedings against him. Appellant relied on self-defense, and it is obvious from the questions that appellant's attorney asked of the witnesses that he had consulted with the appellant.
There is nothing in the record to indicate the reason for appellant's commitment to Bryce Hospital. The order came approximately forty days after trial. There could have been intervening factors between the trial and the commitment order. We cannot automatically say that one who is found to be mentally unstable approximately forty days after trial was also mentally incompetent during the trial. To do so without some form of evidence would be rank speculation.
 III
Appellant next contends (a) that the trial court erred by allowing the prosecution to cross examine appellant about a prior arrest without offering proof of conviction, and (b) that the trial court erred by not instructing the jury that such examination was for the purpose of impeachment only.
On direct examination, appellant's attorney asked him the following:
 "Q. Now, Claudia, you have had some trouble with the police before, haven't you?
"A. I have had trouble with the police, right.
 "Q. Let me ask you this way: Have you ever been convicted of any crime before?
"A. No, I haven't.
* * * * * *
 "Q. Okay. But in other words, you were never convicted of any type of crime in the State of Mississippi?
"A. Oh, yes.
"Q. You were?
 "A. I wasn't convicted. But it was thrown out of court.
* * * * * *
"Q. Do you know what the charge was?
"A. Do I know what the charge was?
"Q. Right.
"A. Yes.
"Q. What was the charge?
"A. They said it was assault and attempt.
"Q. Assault with attempt to murder?
"A. Right.
"Q. Okay. And that case was thrown out?
"A. Thrown out, right.
* * * * * *
 "Q. In other words, you are saying that what prompted you to be arrested and what prompted you to be confined to the State Mental Hospital in Mississippi was because of your beliefs?
 "A. Right. My father tried to make me believe like he believed."
The appellant was then cross examined by the prosecution:
 "Q. When you assaulted that man in Tupelo and they charged you with that crime, was that also because of your religious beliefs?
 "A. It was leading towards that way, yes. It wasn't me —
 "Q. As a matter of fact, they released you on probation, didn't they?
"A. No.
"Q. You deny that?
"A. What?
"Q. You deny that you were convicted on that?
"A. Well, see, my father taken it up.
 "Q. Yeah. But you were released on probation and your father got you put in the hospital?
"A. On that, on that assault and attempt?
 "Q. Yeah. That assault with intent to murder that person.
"A. Well, see —
"Q. Was that based on your religious beliefs? *Page 716 
 "A. — that wasn't me. The one that I did assault wasn't a man, it was some boys.
"Q. Uh-huh.
 "A. The one that I did assault and attempt to kill, they — at the time they wasn't men, they was boys.
"Q. In other words, those were younger boys?
"A. Right.
 "Q. That was based on your beliefs, also, your religious beliefs?
 "A. I guess they didn't like me because I wasn't dealing with them. So, they wanted to gang me. And they did gang me.
"Q. And you tried to kill them?
"A. It was the only defense I had.
 "Q. And then your father put you in the hospital last year; is that right?
 "A. Right. No. See, that didn't happen at the same time. That was —
"Q. Okay. I see.
"A. — sometimes afterwards.
"Q. Those were at different times?
"A. Right.
 "Q. Okay. And you were not convicted of that assault with intent to murder?
"A. No.
"Q. That is what you are telling this Jury here?
"A. Right.
"Q. And you were not placed on probation?
"A. No.
 "Q. Okay. And then your father put you in the hospital last year, I believe is that right?
"A. Right.
 "Q. And the doctors said that you were not legally insane, didn't they?
 "A. They said that I wasn't mentally ill. Just that my thinking didn't go with their thinking."
It is clear from the record that appellant's counsel first injected the matter of the prior arrest into evidence. We also note that the appellant did not object to the State's cross-examination pertaining to the prior arrest. This issue has been answered previously in the case of McClendon v. State,54 Ala. App. 327, 307 So.2d 723 (1975) wherein it was stated:
 ". . . Since there was no objection by the appellant, and the matter had previously been injected into evidence by the appellant's own attorney, such was a proper basis for cross-examination. No ruling of the trial court being invoked in this connection, no question is here presented for review. . . .
 "Moreover, the appellant's negative answer as to the question pertaining to charges of a serious nature rendered such harmless. Rule 45, Revised Rules of Practice, Supreme Court of Alabama, Title 7, Appendix." [Now Rule 45, ARAP (1975).] (Citations omitted.)
 III
The appellant's last contention is that it was reversible error for the trial court to fail to include in its charge to the jury the lesser included offense of assault with a weapon. We need not address the merits of his contention.
At the conclusion of the oral charge, both the State and the defense announced that they were satisfied with the charge. After the jury had left the courtroom and had begun deliberations, the appellant's attorney then excepted.
"It is well settled in Alabama that an exception to the oral charge of the trial judge must be made in the presence of the jury before it retires from the courtroom." Tuberville v.State, Ala.Cr.App., 348 So.2d 868, cert. denied, Ala.,348 So.2d 870 (1977). This the appellant failed to do, and no error can be charged to the trial court.
AFFIRMED.
All the Judges concur. *Page 717