38 So.2d 348

## AUTRY v. STATE.

### I Div. 582.

Court of Appeals of Alabama.
Jan. 18, 1949.

226

A. A. Carmichael, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

Outlaw, Seale & Kilborn, of Mobile, for appellant.

**HARWOOD, Judge.**

This appellant was indicted for and by a jury found guilty of assault with intent to rape. His punishment was fixed at imprisonment in the penitentiary for a term of twenty years.

The evidence introduced by the State tended to show that Mrs. James Johnson, who was Miss Essie Stone at the time of this occurrence, having married prior to the trial below, was a clerk in a dry goods store in Plateau, a community near Mobile. For convenience she will hereinafter be referred to as the prosecutrix. On the afternoon of 13 May 1947, around three o'clock, the appellant entered the store and stated he wanted to buy a pair of shoes. The prosecutrix procured two pairs and told him to try them on. At this time two men entered the store, and as to prosecutrix's version of what happened from this point on we will quote her testimony from the record:

"Two white men came in the door as I went back over there. I had gone to the right hand back of the store and got the shoes and took them over there to him, and I told him to try the eleven on, and I handed it to him, and the white men were in the store, and I told him while he tried them on I would go wait on the two men. Well, I went and waited on the white men, and when I come back to see if he had tried the shoe on, he said he had done tried it on, and I ask him did it fit, and he said, yes, it fit; and I asked him did he want it, and he said no, because it had a rubber heel, and he wanted a leather heel. I told him,

well I didn't have a leather heel, and I still asked him would he like to have a pair of shoes, and he said, no. So, when I went, had to go back to the right hand corner of the back of the store to put the shoe back on the counter where they were, on the stack where the shoes were, and when I started from behind the counter he grabbed me by the shoulders and told me not to scream, if I did he would kill me, so I didn't scream, and he kept pushing me back behind the counter, and when he got me back behind the counter he mashed down on my shoulders and my knees give away, and I fell to the floor, just squatted, and then I propped my hands behind me, to keep him from pushing me on down on the floor. He kept telling me not to scream, not make a sound, and to lay down, and I told him I was not going to lay down; and he kept telling me all of the time not to scream, if I did that he would kill me, that he would cut me to death right there behind the counter if I screamed. About that time he had me pushed over far enough on the floor that I could see through the glass show case to the door, and customer came in and got a Pepsi Cola out of the ice box. We had an electric ice box in there, and she went on and drank it, and she had a quarter, and the Pepsi Colas were six cents, and I kept trying to persuade him to turn me aloose to go up there and collect the money, and he kept telling me if I made a sound he would kill me, that he would cut me to death behind the counter, if I screamed or if I made a sound at all, and I didn't never scream, but I finally persuaded him to turn me aloose to go up there and collect the money, and when I went up there and taken the money, I taken her money, and I rang it up on the cash register, and I give her her change and then I slammed the cash register drawer too and ran out of the door and got Mr. McCurley and told him what had happened."

The prosecutrix further testified that when she fled the store a door in the rear was closed and barred.

She also testified that at the time of this alleged assault the appellant was wearing a blue cap or "tam," and that when he tried

228

on the shoes she observed that he was wearing white ribbed socks, and that a hole, which appeared to have been cut, was in the toe of the sock on his right foot.

On cross examination the prosecutrix testified that at the preliminary hearing she had stated that the man who assaulted her had a scar on the left side of his face.

She did not describe the clothing of the man who assaulted her to the police officers, other than describe the tam or cap, and his socks. She also mentioned the type hair cut he had.

The appellant did not place his hands on her breasts, or tear her clothing, or make any indecent remarks, but did keep pushing down on her and telling her to lay down, and that he would kill her, or cut her to pieces if she screamed. She kept struggling to regain her feet.

Mr. E. D. McCurley, a witness for the State, operates a filling station across the road from the store in which prosecutrix worked. He testified on the afternoon in question he saw her running across the road, calling to him as she ran. She reported to him that a Negro in the store had attacked her and requested that he "see about it." The prosecutrix was in a hysterical condition. He went into his filling station to procure a pistol, and as he started across the road to the store a highway patrol car stopped at a red light and he reported the matter to the two patrolmen in the car. Together with the patrolmen Mr. McCurley entered the store and searched it. They could find no one in it, but did find that the rear door was open and the screen door thereto was unlatched.

On cross examination Mr. McCurley testified that he did not notice any bruises on prosecutrix, or any tears or dirt on her clothing, though her clothing seemed "upset," or "out of shape."

Sallie Perkins, a witness for the State, testified that at around three o'clock on the afternoon in question she was standing on the rear porch of a house just back of the store in which the prosecutrix worked. While there she saw the appellant run past, and continue running until he turned around a house when she lost sight of him.

Appellant was dressed in khaki clothes, and had on a white belt.

Later that same afternoon, in Prichard, she identified appellant, who was then in custody, as the man she had seen running as before set out.

The above constituted the State's main case.

For the defense, Mr. Fred Sanders, Jr., who was a police officer, testified that he got a call between 3:50 and 3:54 on 13 of May 1947, and went to O'Connor's store. He assisted in the search in the store. The back door was unbolted, and the cross bar was leaning up against the wall by the door.

He later went into the house back of the store and there he contacted State's witness Sallie Perkins.

Around 4:40 P.M. he received another call, and then proceeded to apprehend and arrest the appellant.

At the time of his arrest appellant was dressed in a faded blue shirt and trousers, and had on the blue tam cap introduced in evidence.

This witness did not notice a scar on the left side of appellant's face at the time of his arrest, but was unwilling to say that there was no scar.

After appellant's arrest, and in the presence of the prosecutrix appellant's shoes were removed, and there were holes in his socks.

Also after appellant's arrest he was identified by Sallie Perkins as the man she had seen running earlier in the afternoon.

McKinley Travis, a witness for the defense, testified that on the day he was arrested the appellant was at his house from morning until about 3:40 P.M.

Estelle Harrison, appellant's sister, testified that appellant left the house in which they both lived sometime during the morning, and did not return at any time during the day to change his clothes, or for any other purpose.

In his own behalf the appellant testified that he had never been in trouble of any kind prior to his arrest on the present charges.

He lived about two and a half blocks from O'Connor's store but on the day of his arrest he had been at McKinley Travis' house, along with several others, from morning until about 3:40 in the afternoon. He had then walked to Kelly Hill to pay a woman some money, and as he was returning from this errand he was arrested.

At this time he was wearing a light pair of trousers and a green navy shirt, also the tam or beret and white socks introduced in evidence. He did not have on khaki clothes and white belt when allegedly seen by Sallie Perkins, though he did have a pair of khaki pants and a white belt at his home.

Appellant denied he had a scar on the left side of his face on 13 May, and exhibited his face to the jury. He further testified that when he was first taken to the presence of the prosecutrix she looked at his face and stated he was not the man, but she walked around to his back and then stated that he was the man as she knew him by his hair cut.

Appellant denied he had ever seen the prosecutrix before his arrest, or that he had been in O'Connor's store to buy a pair of shoes the afternoon in question.

On cross examination appellant stated that the tam and socks received in evidence were his and that he was wearing them at the time of his arrest. He also stated that he wore a size 10 shoe.

Mr. Kay Strain, who was in charge of the personnel at the mill where appellant was employed and who has known appellant since 1942, testified to his good reputation.

Likewise a showing was made that if Mr. A. E. Kelly, and Mrs. E. M. Davis, of Brewton, Alabama, were present, they would testify that appellant's general reputation in Brewton, his former residence, was good.

In rebuttal the State recalled the prosecutrix who testified that when she first saw appellant after he was apprehended he was on the back seat of an automobile with another Negro man. She told the officers that the other man was not the one, but that appellant was the one who had attacked her.

Mr. Fred Sanders, Jr., the police officer who had appellant in custody when viewed by prosecutrix, likewise testified in rebuttal that appellant and another Negro man were on the back seat of a car, and when prosecutrix viewed them she pointed out appellant and said "that is him," and pointed to the other man and said "that is not him."

We have set out the material factual evidence in this case in detail because of the earnest insistence of appellant's able counsel that the evidence is insufficient to support the verdict rendered.

In this connection counsel has catalogued some 18 facts deduced from the evidence which he contends demonstrate that the defendant could not be guilty of the offense charged. Among these facts are that prosecutrix was not bruised; her clothing was not torn; appellant did not attempt to put his hands on prosecutrix's breasts; nor say any obscene words to her; appellant did not have a scar on his face, etc.

We cannot accept counsel's view that the facts he has listed positively show that this appellant is innocent of the offense charged. They may shed light on the probability of his innocence. The testimony of the prosecutrix however entirely denies and disputes such probability. The jury apparently saw fit to accept the testimony of the prosecutrix, and the other witnesses presented by the State. This conclusion was solely within the jury's province. Neither the trial court, nor this court on review, can usurp the province of the jury in weighing the evidence and passing upon the credibility of the witness, and if the evidence, and the inferences to be reasonably drawn therefrom, are sufficiently substantial to support the finding of the jury, it should not be overthrown and held for naught simply because the judges reviewing the finding on the evidence possibly, or even probably, may have arrived at a conclusion different from the conclusion of the jury. This duty does not rest upon the reviewing court and is not to be included in its functions. This responsibility is solely upon the jury, the members of which have seen and heard the witnesses, and are in position to sift the truth from live testi-

230

mony far better than a reviewing court can perform this function by reading such testimony in cold type in a record. Brooks v. State, 8 Ala.App. 277, 62 So. 569.

■ The doctrine is well established under the decisions of this State that on a charge of assault with intent to rape, the evidence, to be sufficient, to justify a conviction, should show such acts and conduct on the part of the accused as would leave no reasonable doubt of his intention to gratify his lustful desire against the consent of the female and notwithstanding resistance on her part. Pumphrey v. State, 156 Ala. 103, 47 So. 156; Burton v. State, 8 Ala.App. 295, 62 So. 394; McCarter v. State, 32 Ala.App. 352, 26 So.2d 211.

■ Light is shed on the application of the above principle to specific facts by the following observation found in Pumphrey v. State, supra [156 Ala. 103, 47 So. 157]:

" * * * While this is true, yet, in making application of the principle in the concrete, each particular case, we think, must stand upon its peculiar facts and circumstances. As to this offense the law looks beyond the act done and embraces the accompanying intent. It is the intent that raises the act to the gravity of a felony, and calls down upon it the greater severity of punishment. Intent, we know, being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence. Sims' case [Sims v. State], 99 Ala. 161, 13 So. 498; Dudley's case [Dudley v. State], 121 Ala. 4, 25 So. 742; Horn's case [Horn v. State], 98 Ala. 23, 30, 13 So. 329; Talbert's case [Talbert v. State], 121 Ala. 33, 25 So. 690. * * *"

■ It is our opinion that the evidence of the State, if believed by the jury under the required rule, tended to show that this appellant made an assault and battery on the prosecutrix. His action in forcing her into a sitting position and his demands that she lay down, accompanied by threats to kill her or to cut her to pieces if she screamed, was substantial evidence from which the jury could reasonably infer his felonious intent to ravish the prosecutrix. No error therefore resulted in the court's action in denying the written affirmative charge requested by the appellant, nor in denying appellant's motion for a new trial on the ground that the verdict of the jury was not supported by sufficient or substantial evidence.

After the jury had deliberated overnight they returned to the court room and requested the trial judge that he permit the court reporter to read to them his report of certain portion of the testimony.

After indicating his doubt as to the propriety of granting such request the court then said: "If it is just something of a slight nature, I will be glad to have you let me know what it is. If there is no objection on the part of the defendant or the State, I will let him read it. I believe this jury is intelligent enough not to require all of it to be read. Is there any objection to letting the jury state what they want to know?—"

A juror then stated that several of the jurors would like to refresh their recollections as to whether the prosecutrix had testified that the appellant had a blue cap on before any arrest was made.

A portion of prosecutrix's testimony, indicated in the record, about two pages, was then read to the jury. No objection was interposed to this procedure by the appellant's counsel.

In Johnson v. State, 3 Ala.App. 155, 57 So. 499, this court stated that it was not improper for a trial court to allow the official stenographer, at the request of the jury, to read over to the jury the testimony of one of the witnesses to refresh the memory of the jury as to what had been testified to by the witness. See also Hull v. State, 232 Ala. 281, 167 So. 553.

■ While charges which tend to emphasize certain phases of the evidence are faulty, and the giving of such charges is erroneous, the vice of such charges is that the emphasis of particular portions of the evidence emanates from sources outside the jury, an influence not permissible. Where a jury itself requests that certain testimony be read over to them by the

court reporter, to refresh their recollection concerning it, the emphasis on this portion of the testimony is already inherently present in the jury's mind, and certainly the mere rereading of the requested portion of the testimony, to clarify the jury's recollection thereof cannot add any emphasis not already present as to such testimony. No error therefore resulted from the court's action in permitting the court reporter to read to the jury, at their request, and with the implied consent of the appellant, that portion of prosecutrix's testimony which was read to the jury.

A juror also asked the court if the prosecutrix gave a description of appellant's clothing to the officers before he was picked up.

The court then proceeded to give the jury further instructions, the substance of which was that the jury were the sole judges of the evidence, and concluded his remarks with the following statement:

"Now, you have to deduce from all of the evidence whether, or not, the lady gave a description of the man, and you have to deduce from all of the evidence whether, or not, the officers, from some information, were looking for that type or character of man, but you cannot get that evidence from what the witness said, in the absence of the defendant. It must be obtained, if at all, from the acts and conduct of all the parties as brought out by all of the evidence. Does that answer it?

"Mr. Seale: Let me reserve exception to that part of the Court's charge, where you charge the Jury that they have to deduce from all of the evidence—

"The Court: I did not say what you have to do, but you may deduce.

"Mr. Seale: All right, may. We except to that portion of the Court's oral charge where the Court states, in substance, that the Jury may deduce from all of the evidence what the witness may have said, where there is no evidence as to what the witness said."

■ Appellant's counsel contends that the court's statement to the jury "Now, you have to deduce from all the evidence whether or not, the lady gave a description,

etc." is to be construed as a direction to the jury that they must deduce, etc. We do not agree with this construction. We think it clear that the court was merely instructing the jury that if these facts about which inquiry was made were to be determined, then the jury would have to find their existence from the evidence before them, certainly a correct statement of law.

Counsel for appellant also argues that the court's action in sustaining the State's objection to certain portions of his argument to the jury constituted error.

■ Because of the fragmentary character of the portions of the argument copied into the record it is difficult if not impossible to review this asserted error. From the remarks of defense counsel, the Solicitor, and the court, we think it necessarily inferable that the portions of defense counsel's argument were preceded by and related to other portions of his argument which are not set forth in the record. Apparently the defense counsel was attempting to argue as a matter of common knowledge the difficulty of identification of colored men by white women, and sought to illustrate the point with a specific case of which the jury had common knowledge. As before stated, the above are inferences which we have drawn from a careful consideration of the portions of the argument and colloquy set forth in the record. As to the soundness of such inferences we are uncertain. Points intended to be reviewed must be set out in the record with reasonable certainty, and in such manner as to inform the court of the matter to be reviewed with such a degree of clarity as to enable the reviewing court to act without danger of mistake, otherwise the matter complained of will be disregarded because of uncertainty. Findlay v. Pruitt, 9 Port. 195.

■ Certainly in the state of the record we think that full operation should be given to the general principle that propriety of argument of counsel is largely within the trial court's discretion. Ray v. State, 32 Ala.App. 556, 28 So.2d 116; Bell v. State, 25 Ala.App. 441, 148 So. 751; Gaines v. State, 23 Ala.App. 166, 122 So. 699.

It is our opinion that this record is free of error materially affecting the substantial rights of the appellant, and is therefore due to be affirmed.

Affirmed.