73 So.2d 566

**VANDIVER v. STATE.**

8 Div. 244.

Court of Appeals of Alabama.

Nov. 3, 1953.

Rehearing Denied March 16, 1954.

Si Garrett, Atty. Gen., Wm. H. Sanders, Asst. Atty. Gen., for the State.

Rogers & Tyree, Florence, Wm. Stell, Russellville, for appellant.

PRICE, Judge.

Appellant, Henry Woodrow Vandiver, and one Walter D. Riggs were jointly in-

dicted and tried together. The indictment charged in Count one the offense of distilling prohibited liquors and in Count two, the illegal possession of a still. When the State had rested its case the defendant moved to exclude the evidence as to both counts of the indictment. The State then asked for a nolle prosequi as to Count one. The court granted the defendant's motion as to Count one and denied it as to Count two. Both defendants were found guilty as charged in Count two.

Appellant was sentenced to imprisonment in the penitentiary for a term of five years. Riggs is not a party to this ap-

The State's evidence was presented by three federal agents and a deputy sheriff. Each witness testified he was a member of a party of five officers that raided a still nine miles northeast of Florence, in Lauderdale County, on Sunday morning, May 25, 1952. The evidence showed the fifth officer had been transferred from the district and he was not a witness in the case. The officers made two or three trips to the still site during the week prior to the raid but saw no one at the still on those visits.

The still was located near a small waterfall in a large hollow which ran east and west. The waterfall was in a pit or depression where the little stream had eaten out the earth, forming a hole with irregular edges all around, its sides ranging three feet or more in depth. The pit was surrounded by foliage, weeds and underbrush. The surrounding terrain was rough and mountainous.

On the morning of the raid the officers separated a mile from the still. Agent Yielding approached it alone. Deputy sheriff Dhority and agent Fisher approached the spot together and agents Powell and Williams came in from the opposite side.

The witness Fisher testified he was crawling and at a point about thirty yards from the still he could see two men's heads moving around in the vicinity of the still. When he reached the bank and looked down into the still yard Vandiver was squatting by the cooling stand at the condenser. He could not see his hands. Riggs was standing beside Vandiver, facing him. When he handcuffed Vandiver he noticed fresh dough on his hands. There was also fresh dough on the spout that came out of the condenser from the stand. Riggs also had the same type dough on his hands.

The witness Dhority testified as he crawled up to the still he could see two heads moving about but never saw either of the men doing anything with their hands. He saw dough on Vandiver's hands when he was arrested and the same type fresh dough was on the condenser where the worm comes out.

Witness Powell worked his way down a steep hillside covered with underbrush. He could see a man wearing a khaki shirt standing on top of the still stirring the mash through the cap hole in the still and saw a man in a blue shirt walk through the still yard. When witness reached the still he saw that Riggs was the man stirring the mash, and defendant was the man in the blue shirt.

It was admitted by defense counsel that a coat lying on a shelf in the still yard belonged to Vandiver.

Witness Yielding testified that as he moved in to the still he could see two men from the waist up. The one in the khaki shirt was up on the still head stirring the mash. He saw the man wearing a faded blue shirt punch up the fire and go over to the cooling barrel. When he reached the still he saw that Vandiver, whom he had known for three years, was the man in the blue shirt.

The officers testified a complete still was found. A fire was burning in the furnace and the mash was hot and "Just beginning to roll" or boil.

The testimony of defendant's witnesses was to the effect that defendant was with a group of people fishing for minnows at the "Little Dam" in Florence early on the morning of May 25. Morgan Vandiver had an automobile and it was suggested that the entire group go to Happy Hollow on Shoals Creek to fish. Riggs and two of the others had trot lines at Happy Hol-

low. Since there were twelve in the group Morgan Vandiver took the defendants Riggs and Vandiver to the bus station to take a bus.

The other ten (Morgan Vandiver, his wife Methyl, their four children, Silas Chaney and his wife, Frank Brown and Johnnie Jackson) drove to Happy Hollow in the car. Morgan and Methyl Vandiver and Silas Chaney testified as defendants witnesses. Frank Brown and Johnnie Jackson were out of the State at the time of the trial.

Johnnie Jackson had a motorboat and he took the group across Shoals Creek to the mouth of the hollow and went back and picked up the defendants when their bus arrived. When defendants reached Happy Hollow they found the group fishing, except for Silas Chaney, Morgan Vandiver and Frank Brown. The testimony was to the effect that these three had gone up the hollow a short distance to set minnow traps. Chaney noticed smoke up there and he and Frank Brown went to the still site. They found a man operating the still and asked if he had any liquor. He replied: "No, but I will have in a few minutes." When they returned to the group defendants had arrived and were fixing dough balls to use for fishing. When told of the still defendant Vandiver said "I believe I will go, I'd rather have a drink of whiskey than a mess of fish."

Riggs stated that the man Chaney mentioned was at the still when they arrived and told defendants he would have some whiskey ready in a few minutes and they sat down to wait. Shortly thereafter the operator left to get vessels to catch the whiskey in and after he had gone the officers came.

The defendant did not testify as a witness.

State's witnesses Dhority and Yielding testified in rebuttal after proper predicate and over defendants' objections that in the automobile on the way to the jail after the arrest Vandiver stated in Riggs' presence that they got off the bus up on the highway and walked from there through the woods to the still and that his purpose in going to the still was to get some whiskey.

Defendant urges for a reversal the insufficiency of the evidence to sustain the verdict. It is insisted that the evidence shows no more than the presence of defendant at a still on land not in his possession or under his control and argues that "our Alabama courts have clearly and unquestionably held time and time again that mere presence at a still, connected with one or two isolated acts in and about the still, is wholly insufficient to convict upon the charge of possession of a still."

■ It is true that the mere presence of a defendant at a still, without more, will not warrant a conviction for its possession, but our courts hold that "any act of the defendant in and about a still which indicates an interest in, or that he is aiding or abetting in the possession, may be taken as sufficient upon which to base a verdict of guilt." Lock v. State, 21 Ala.App. 81, 105 So. 431, 432; Rikard v. State, 31 Ala. App. 374, 18 So.2d 435, certiorari denied 245 Ala. 677, 18 So.2d 436; Hudson v. State, 249 Ala. 372, 31 So.2d 774.

■ The incriminating facts and circumstances presented a jury question and were ample to sustain the judgment of conviction. There was no error in the overruling of the motion to exclude the State's evidence nor in refusing the general affirmative charge or denying the motion for a new trial on the ground the verdict was contrary to the evidence.

Defendant's witness, Dan Glenn, a professional photographer, stated he went with defendants Vandiver and Riggs to a still site about two miles off the road between St. Florian and Shoals Creek bridge. He described a waterfall at the site. The court sustained the State's objection to the questioning of the witness because the place had not been sufficiently located.

Witnesses Gray and Hill then testified they were taken to the still site by defendants in July. They described the hole or pit. Gray stated he closely examined the pit and the surrounding terrain from distances varying from sixty yards, standing

on a log, to the edge of the pit, to see whether or not any activity of a man in the hole could be observed. The defendants were standing in the hole and he was wholly unable to see more than their heads or the tops of their upraised hands at 15 or 20 yards from the hole. Gray was shown photographs, defendants exhibits Nos. 1, 2 and 3 and he stated they fairly portrayed the scene defendants took him to. He said there was no freshly cut timber or any evidence of recent clearing or change in the foliage. Hill described the foliage around the hole and still site. Riggs stated in his testimony that the photographer accompanied defendants to the still site and the photographs were made there. He testified the photographs accurately portrayed the site in question and in response to questioning by the court he said he was with the photographer when the pictures were taken and the scene in exhibit 1 "looks just like it did the day the still was there" and he pointed out objects in the photograph such as trees and branches and said he knew they were at the site.

The photographer testified he took the pictures at defendants' request on July 18th and finished them himself. He testified as to distances his camera was set up to take the pictures and stated they accurately portrayed the scene as he found it.

Defendants then offered the photographs in evidence. The State objected to their introduction on the grounds they were not properly identified; not proven that they fairly and accurately portray the scene as of the date of May 25, 1952; not shown the photographer had equipment which accurately shows as to terrain and on the further ground the pictures do not show the entire scene but only a part of it and that part is not fairly and accurately shown and nothing produced by this photograph would in anywise aid the jury in ascertaining the true picture in the case. The court sustained the objection and defendants duly excepted.

We are of the opinion that reversible error cannot be predicated upon the refusal in evidence of the photographs.

■ It is not error to refuse to admit photographs of the locus in quo when it is not established that there had been no material changes in the surroundings and the pictures were taken several weeks after an occurrence. Bradley v. Lewis, 211 Ala. 264, 100 So. 324; Williams v. Wicker, 235 Ala. 348, 179 So. 250; Wilson v. State, 256 Ala. 12, 53 So.2d 559. We are in accord with the State's insistence that from May 25 to July 18 there would have been some growth in the shrubbery, weeds and other foliage, which according to the evidence covered the entire area, making observation of the still site more difficult. Moreover, there was no contention that either view was taken from the officers' observation points and no evidence that the photographs portrayed the scene as it appeared to the officers.

■ It is a familiar rule of law that the range of cross-examination of a witness is within the sound discretion of the trial judge and his rulings will not be disturbed except for gross abuse of such discretion. See citation of innumerable cases Ala.Dig. Crim.Law ⊜1153(4). We have carefully considered the court's rulings in connection with the cross-examination of the witness Walter D. Riggs and find no abuse of discretion.

■ After the jury retired and had deliberated for some time they informed the court they wished to have their recollections refreshed as to whether a witness had testified dough, other than that on defendants' hands, had been found at the scene. The court requested the Solicitor and defendants' attorney to confer and to give the court reporter the name of the witness who had testified in this regard. Before the reporter read the excerpts from the testimony of Louis Fisher counsel was asked if they wanted the reporter to check the testimony further and they answered "no." After the testimony was read to the jury and they had again retired defendants' counsel moved for a mistrial because of the emphasis given the testimony of this witness. The court overruled the motion and defendant excepted. This ruling by the

court was without error. Johnson v. State, 3 Ala.App. 155, 57 So. 499; Hull v. State, 232 Ala. 281, 167 So. 553; Autry v. State, 34 Ala.App. 225, 38 So.2d 348.

■■ It is proper to permit the State's witnesses to describe the locus in quo and to testify as to what they observed at the still site, Allen v. State, 25 Ala.App. 181, 142 So. 777; Arrington v. State, 24 Ala. App. 233, 133 So. 592; Roberts v. State, 22 Ala.App. 178, 114 So. 890, and it was not error to allow the State's witness to testify as to their observation of the still and the condition of the mash on their trips to the site during the week preceding the raid.

■ In Matthews v. State, 18 Ala.App. 222, 90 So. 52, the refusal of a charge similar to refused charge A–4 was held to be reversible error because the principles of law involved were not covered by the court's charge or charges given at the request of the parties. Here its refusal was without error. The propositions of law were adequately covered by these oral instructions of the court:

"As I have said, gentlemen, the charge is brought by Grand Jury Indictment and you will have it with you, but the indictment is not a circumstance to be taken against either of the defendants, it is merely the means by which the defendant is brought into Court, and when I say defendant I mean defendants, and it is merely the means by which the defendants are brought into court to be tried.

"Now, in answer to Count 2 of the indictment, the defendants each say they are not guilty, and this plea of not guilty places the burden on the State of proving to you each of the defendants guilt beyond all reasonable doubt and to a moral certainty, and each of the defendants in this case, just like the defendant in every criminal case tried in the State of Alabama, is presumed to be innocent until his guilt has been proven beyond all reasonable doubt and to a moral certainty or until the State has met it's burden. That presumption of innocence attends each of the defendants when he enters upon the trial and stays with him as a shield against conviction until, but only until, the State has met that burden of proof by proving each of the defendants guilty beyond a reasonable doubt and to a moral certainty by the evidence in the case, and if the State has met that burden of proof the defendant of course is no longer entitled to that presumption of innocence and neither of the defendants is any longer entitled to the presumption of innocence."

■ The remainder of the charges refused to defendant, which were correct propositions of law, were substantially and fairly covered by the court's charge or by charges given for defendant.

There being no reversible error in the record, the judgment of the trial court is affirmed.

Affirmed.

On Application for Rehearing.

It is requested that we set out the testimony relating to statements testified to by State's witnesses as having been made by defendant in the automobile en route to jail after the arrest, and in 'phone conversations at the jail.

Officer Dhority, after stating that defendants Vandiver and Riggs were not threatened in any way; were offered no reward or inducement to get them to talk; were not told it would be better for them to make a statement or worse if they did not do so, testified:

"A. Mr. Vandiver made the statement that they got off the bus on the highway and went through the woods to the still.

"Defendants object on the ground that the answer is not responsive to the question on the predicate laid.

"Objection overruled. Defendants except.

"Q. I will ask you if at the same time and place and in that same conversation if the defendant Vandiver over there in the presence of the defendant Riggs stated

to you or stated to Mr. Yielding in your presence that he went down there to get some whiskey?

"Defendants object on the grounds as heretofore assigned.

"Objections overruled. Defendants except.

"A. He did.

\* \* \* \* \* \*

"Q. Did you hear the conversation, that is, the defendant Vandiver's conversation over the phone?

"The defendants object on the ground that any answer if given would be wholly illegal, irrelevant and immaterial to any issue in the case and it is not part of the res gestae.

"Objection overruled. Defendants except.

"A. I heard him talking over the phone, I couldn't say what his conversation was exactly.

"By Mr. Tyree: We move to exclude the testimony. He is trying to impeach this witness on an immaterial matter.

"By the Court: Overruled.

"Q. For the purpose of refreshing your recollection did you hear the defendant Vandiver tell someone to get Morgan Vandiver or to go down to the river and tell Morgan Vandiver and his wife and the defendant's wife that he was in jail?

"The defendants object. The solicitor is certainly leading the witness and he is attempting to impeach this witness on an immaterial matter.

"Objection overruled. Defendants except.

"By Mr. Potts: I will withdraw that question.

"Q. You said you didn't recall his conversation. A. I don't recall all of his conversation.

"Q. Shortly after that telephone conversation was made did you see Morgan Vandiver and the defendant's wife, Minnie Vandiver, come to the jail there together? A. Yes sir.

"The defendants object on the grounds previously assigned.

"Objection overruled. Defendants except.

"By Mr. Tyree: May it please the court, may we have the same objections shown in each question.

"By the Court: Mr. Tyree, if you will, please sir, just make your objections to each question and I will rule on them.

"Q. Was it, Mr. Dhority,—how long, in your judgment was it before they came after that conversation?

"Defendants object on the same grounds heretofore assigned.

"Objections overruled. Defendants except.

"A. Just a very few minutes before they came. I would say around ten or fifteen minutes after the phone call until they came to the jail.

"Defendants object to this answer on the same grounds as heretofore assigned.

"Objection overruled. Defendants except.

"Cross Examination

"By Mr. Tyree: Q. You are not telling these gentlemen on the jury that in that conversation that the defendant said it was his still? He didn't admit that, did he? A. No sir, he didn't tell me it was his still."

It is also requested that we set out these statements by defendant Riggs in identifying the photograph in question:

"By the Court: Q. Does it look like it did the day the still was there and you were arrested? A. It looks like it.

"Q. It looks just like it did? A. It looks just like it did."

Application Overruled.