BOOKOUT, Judge.
First degree murder; sentence: life imprisonment.
On November 14,1975, Terry Jenkins was shot to death on the campus of Alabama State University in Montgomery. Around 3:00 P.M. on that date, Jenkins was walking between buildings on the campus with companions Cliff Eaton, Willy Dunn and Jessie *92 Giles. Someone came up behind the group and called Jenkins’ name. Suddenly a quick series of gunshots was heard, and Jenkins lay dead on the ground.
At the end of the State’s case in chief, the defense rested without putting on any evidence. Appellant futilely tested the sufficiency of the evidence by a motion to exclude, by a request for the affirmative charge and by motion for a new trial.
I
Cliff Eaton testified that on hearing the shots, he turned and saw Jenkins lying on the ground and saw a man running away toward Bibb Graves Hall, a girls dormitory. He said the fleeing man was wearing a burgundy-colored coat rimmed with white fur. He did not see the gun and could not identify the assailant.
Willy Dunn heard shots and saw the killer standing over Jenkins and shooting him as he was on the ground. Dunn heard a total of four or five shots and saw the assailant run toward Bibb Graves Hall. Dunn could not identify the man who shot Jenkins, but said he was wearing a burgundy coat with white trim on the collar and sleeves.
Floretta McCary was walking across campus and witnessed the shooting, stating:
“Well, it was a lot of guys standing in front of Patterson Hall. And there was a dude with a burgundy jacket on .
He shot this other dude and he fell.” She said Jenkins fell and the killer kept shooting him and then ran by Bibb Graves Hall. As the man ran past her, she saw him putting a pistol in his pocket, however, she could not identify him.
Perry Lee Ayres had gone to the campus on the day in question to pick up the sister of a friend. He was parked in front of Bibb Graves Hall and was in the process of tightening the mud flaps on his car when he heard three shots. He did not see the shooting, but the assailant ran within ten feet past him. Ayres said the man was wearing a maroon coat with a white fur collar and was putting a gun into his right coat pocket. Ayres positively identified the. appellant as that man.
Greta Kent, a resident student, was lying down in her dormitory room when she heard the shots. She immediately got up and looked out the window and saw the appellant, whom she identified, running across the street behind Bibb Graves Hall toward her dormitory. He was wearing a dark-colored coat and appeared to be holding his right side.
Gwendolyn McCurdy shared an apartment with Debra Carter, Margaret McGhee and Linda Brooks. Appellant had been dating Margaret McGhee. On the afternoon of November 14, 1975, appellant came to the apartment. He was wearing a burgundy or maroon coat. He asked Miss McCurdy to go to the campus and find his brother Jerome and bring him to the apartment. She could not locate Jerome, but he nevertheless came by the apartment about twenty minutes later. Jerome told appellant that there had been a shooting on campus, and appellant replied that he knew it and had to get out of there.
Appellant asked Miss McCurdy for a wig, but she did not have one. She said appellant, “. . kept saying the guy had ripped him off for six hundred and fifty dollars or seven hundred dollars.” She did not know to whom he was referring however. The witness said she pulled her car around to the back of the apartment and picked up appellant and his brother. Jerome rode up front with her, but completely inconsistent with innocence, appellant rode in the trunk of the ear. She drove them to a house across town and let them out.
After appellant had left and Gwendolyn McCurdy had returned, Debra Carter found appellant’s burgundy coat rolled up and stuffed in the mattress of a roll-away bed in the closet of Margaret McGhee’s bedroom. She found a pistol under the mattress of Miss McGhee’s bed. The gun was test fired, and a ballistics test showed that it was the same gun that fired the bullets that killed Jenkins.
There were no eyewitnesses to the actual shooting who could positively identi *93 fy appellant as the killer. Likewise, none of the witnesses who identified appellant at or near the scene of the crime actually saw the shooting. Because of this, appellant says the evidence is insufficient to support the verdict. We strongly disagree. Without citing the numerous cases holding that circumstantial evidence will support a verdict of guilty,[1] we simply observe that seldom do we see a stronger, more cogent case of circumstantial evidence. All the evidence points toward appellant as the killer and conversely, all of appellant’s actions were inconsistent with his innocence. The trial judge ruled correctly on appellant’s challenges to the sufficiency of the evidence.
II
Appellant contends that Charles Wesley Smith was not properly qualified as a ballistics expert and that the court erred in allowing him to connect the death bullet with the gun found in the room of appellant’s girl friend.
Appellant’s objection went to the sufficiency of testimony qualifying Smith as an expert witness in the field of ballistics. Appellant’s objection did not question the standards of the scientific test or its general acceptance as such. The State, in its brief, correctly cites White v. State, 294 Ala. 265, 314 So.2d 857 (1975) as controlling:
“. . . The criterion for admission of expert testimony is that the witness, by study, practice, experience, or observation as to the particular subject, should have acquired a knowledge beyond that of ordinary witnesses. . . .”
White restates the time-honored proposition that, “[wjhether a witness is shown to possess the requisite qualifications of an expert is a preliminary question largely within the discretion of the trial court. . The appellate court will not reverse its ruling unless there has been an abuse of that discretion.” (Citations omitted.) White likewise strongly supports the proposition set out in Section I, above, that circumstantial evidence alone is sufficient to support a guilty verdict of the most heinous crime.
The State, in attempting to establish Charles Wesley Smith as an expert in ballistics, elicited some general information on his background, but failed to establish many specific facts to support his expertise in the field of ballistics. The State established that he had a chemistry degree from Auburn University; that he had worked an unspecified period of time for the Department of Toxicology under Dr. C. J. Rehling, Mr. Robert Johnson and Dr. Richard Roper; that he had attended an unspecified number of schools and seminars dealing with analysis of physical evidence; that he had taught in an unspecified number of schools or courses; and, most strongly, that his primary duty was the examination of physical evidence, which included examining weapons and bullets. While the State should have elicited more specific facts to establish Smith’s competency as a ballistics expert, enough general information was put forth to show that Smith had acquired a knowledge beyond that of an ordinary witness on the subject. Such a predicate was probably sufficient to support the trial court’s ruling, but barely so.
In any event, counsel for appellant subjected the witness to a thorough and sifting cross-examination, and by his detailed and descriptive answers, the witness conclusively proved himself to be an expert on the subject of ballistics. Cross-examination is one of the methods available to an appellant as a safeguard “against being railroaded by the testimony of a mountebank or charlatan” as set out in Frazier v. State, 40 Ala.App. 67, 112 So.2d 212 (1958). No error resulted.
Ill
After the jury had retired and begun its deliberations, it returned to the courtroom and asked to rehear the testimony of Perry Lee Ayres. Appellant objected, and the court stated:
*94 “All right. We will allow the testimony —Well, do you object to the method of having the recording played back, or do you want the Reporter to read question and answer? . . . ”
Counsel for appellant replied:
“I don’t have any objection to which way it is done. I just object, period, to it being done.” ~
The jury was returned to the courtroom, and the complete testimony of Ayres was replayed on the tape recorder, after which the jury retired for further deliberations. Appellant contends that it was error to replay the testimony of Ayres because it would place undue emphasis on that portion of the testimony to the prejudice of the appellant, citing Autry v. State, 34 Ala.App. 225, 38 So.2d 348 (1949).
Autry distinguished between the court giving a jury charge that emphasizes a particular portion of the evidence, and the case where a jury requests to rehear a particular portion of the evidence. There, the Court of Appeals stated that, “the vice of such charges is that the emphasis of particular portions of the evidence emanates from sources outside the jury . . . .” In the latter case, “the emphasis on this portion of the testimony is already inherently present in the jury’s mind, and certainly the mere rereading of the requested portion of the testimony, to clarify the jury’s recollection thereof cannot add any emphasis not already present as to such testimony.
Here, there was no objection to the manner in which the jury heard the testimony, whether by replaying it on a tape recorder or by having a court reporter read the testimony to them. So long as there is no valid question raised as to the accuracy of the transcript or transcription, it is immaterial to this Court whether the testimony be read aloud by the court reporter or replayed on a tape recorder. The trial court may properly allow the jury to rehear the testimony of witnesses when requested by the jury, and this matter is within the sound discretion of the trial court. Jenkins v. State, 51 Ala.App. 521, 287 So.2d 233 (1973); Morrow v. State, 52 Ala.App. 145, 290 So.2d 209 (1973),. cert. denied 292 Ala. 743, 290 So.2d 213, cert. denied 419 U.S. 853, 95 S.Ct. 97, 42 L.Ed.2d 85. Adams v. State, 46 Ala.App. 402, 243 So.2d 386 (1970) has no application here.
This Court has carefully reviewed the record and has entertained oral argument on this appeal. All the grounds relied upon by the appellant for reversal have been considered in the light of the record, briefs and arguments of counsel, and we find no reversible error.
AFFIRMED.
All the Judges concur.

. 6 Ala.Digest Criminal Law &wkey;552.