Cynthia Tell, as dependent widow of Donnie Lee Zeigler, deceased, appeals from a summary judgment entered in favor of Terex Corporation and Terex Equipment Limited ("TEL") (hereinafter Terex Corporation and TEL are sometimes referred to collectively as "Terex"),[1] on Tell's claims asserted under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). Tell also challenges several discovery rulings made by the trial court. We reverse and remand.
 Facts
Beginning in March 2003, Donnie Lee Zeigler was employed by Elmore Sand Gravel, Inc., as a haul-truck driver. Zeigler was assigned to drive a 25-ton, articulated off-road haul dumptruck manufactured by Terex in 2002 ("the dumptruck"). *Page 176 
As part of his daily duties, Zeigler was to inspect the dumptruck before and after he finished his shift to check for various problems, including problems with the brake-fluid level.
The dumptruck had been purchased by Cowin Equipment Company, Inc., another defendant in this action, and leased to Elmore Sand Gravel on April 9, 2002. Cowin Equipment retained responsibility for servicing and repairing the dumptruck under the terms of the Terex warranty.
On December 20, 2003, Zeigler was working at Elmore Sand 
Gravel. About an hour after his shift began, Zeigler radioed Derrell Sanders, another driver working for Elmore Sand 
Gravel, and reported that the brake light on the dumptruck was on and that he was going to check his brakes.
About an hour after Zeigler's call, Sanders drove around to Zeigler's dumptruck and saw Zeigler trapped under the bed of the dumptruck, which was in the lowered position. Sanders immediately jumped into the cab of the dumptruck to raise the bed and free Zeigler. Zeigler was taken to the hospital, where he subsequently died from his injuries.
Cynthia Tell, as Zeigler's dependent widow, sued Terex, Cowin Equipment Company, and others; Tell asserted AEMLD claims against Terex. Terex moved for a summary judgment, asserting that Zeigler had been contributorily negligent and had assumed the risk of injury by positioning himself under the bed of the dumptruck while it was raised and by positioning himself under the raised bed of the dumptruck without first putting the body-safety prop bar in place. Terex presented evidence indicating that Zeigler had been instructed never to get under the raised bed of the dumptruck for any reason. Terex also presented evidence indicating that Zeigler had been instructed to never get under the raised bed of the dumptruck without first employing the body-safety prop bar. The evidence also established that it was not necessary for drivers to get under the bed of the dumptruck to refill the brake-fluid reservoir.
Tell filed a motion seeking to strike certain materials filed by Terex in support of its summary-judgment motion; Tell argued that those materials were inadmissible and, therefore, that they should not be considered by the trial court. Tell also filed a motion pursuant to Rule 56(f), Ala. R. Civ. P., claiming that she could not properly respond to Terex's summary-judgment motion because of outstanding discovery issues and that the trial court should delay its consideration of the pending summary-judgment motion pending further discovery.
The trial court denied Tell's motion to continue the pending summary-judgment motion, filed pursuant to Rule 56(f), Ala. R. Civ. P., and her motion to strike certain evidentiary materials submitted by Terex. The trial court then entered a summary judgment for Terex without providing a detailed statement of its reasoning. However, in its order, the trial court cited several cases that recognized that the contributory negligence of the injured party was a complete bar to recovery under the AEMLD. Because Tell's claims against Cowin Equipment Company and other defendants remained pending, the trial court certified the summary-judgment order for interlocutory appeal, pursuant to Rule 54, Ala. R. Civ. P.
Tell appealed, asserting the following arguments:
 "I. The trial court erred in finding that Zeigler was contributorily negligent.
 "II. The trial court erred in denying Tell's motion to strike Terex's inadmissible evidence. *Page 177 
 "III. The trial court erred in denying both Tell's motions to compel discovery, and Tell's motion to deny or continue summary judgment pursuant to Rule 56(f) [Ala. R. Civ. P.]."
 Standard of Review
 "A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, [Ala. R. Civ. P.]. In reviewing a summary judgment, this Court will view the evidence in a light most favorable to the nonmovant and will resolve all reasonable doubts against the movant."
Bean v. BIC Corp., 597 So.2d 1350, 1351 (Ala. 1992).
 Analysis I. Whether the trial court erred in finding that Zeigler was contributorily negligent.
Tell alleges that the trial court erred in relying on Zeigler's alleged contributory negligence as the basis for entering the summary judgment. In Hannah v. Gregg, Bland Berry,Inc., 840 So.2d 839 (Ala. 2002), this Court stated the following principles concerning the application of contributory negligence at the summary-judgment stage of an action:
 "A plaintiff cannot recover in a negligence action where the plaintiffs own negligence is shown to have proximately contributed to his damage, notwithstanding a showing of negligence on the part of the defendant. Likewise, a plaintiff's contributory negligence will preclude recovery in an AEMLD action. The question of contributory negligence is normally one for the jury. However, where the facts are such that all reasonable persons must reach the same conclusion, contributory negligence may be found as a matter of law.
 "To establish contributory negligence as a matter of law, a defendant seeking a summary judgment must show that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred. The proof required for establishing contributory negligence as a matter of law should be distinguished from an instruction given to a jury when determining whether a plaintiff has been guilty of contributory negligence. A jury determining whether a plaintiff has been guilty of contributory negligence must decide only whether the plaintiff failed to exercise reasonable care. We protect against the inappropriate use of a summary judgment to establish contributory negligence as a matter of law by requiring the defendant on such a motion to establish by undisputed evidence a plaintiff's conscious appreciation of danger."
840 So.2d at 860-61.
 A. Evidence and Arguments Presented by Terex
In its motion for a summary judgment, Terex argued, among other things, that Zeigler was contributorily negligent and that he assumed the risk of injury when he put himself underneath the bed of the dumptruck, and particularly when he put himself underneath the bed of the dump-truck without first putting in place the body-safety prop.
In support of that motion, Terex presented the following evidence:
Terex offered into evidence a copy of a safety-and-maintenance manual that, Terex asserted, was provided with the dump-truck. This manual instructed the user: "Do not work under or near an unblocked or unsupported body. Always use the *Page 178 
body safety prop." Terex offered the deposition testimony and affidavit testimony of David Gaddy, the general manager of Elmore Sand Gravel during the time that Zeigler was employed there. Gaddy testified that he had orally instructed the employees at Elmore Sand Gravel, among other things, to not "get up under a dump body." Gaddy also testified that during some of those conversations with employees he discussed the use of the body-safety prop. Gaddy testified that drivers had no need to use the body-safety prop because they had no reason to be under the bed of a dumptruck; according to Gaddy, drivers were not allowed to work on the trucks and were instructed to contact a mechanic if they had any mechanical problem with the truck. However, Gaddy admitted that, after Zeigler's death, he learned that the mechanics had allowed the drivers to add brake fluid to the reservoir of the dumptruck, if necessary. Gaddy also testified that he discussed with the drivers how to raise the body-safety prop; Gaddy testified that it "takes less than 2 seconds" to employ the body-safety prop.
Additionally, Terex offered the deposition testimony of Billy Joe Gibbons, an employee of Cowin Equipment Company, the company responsible for servicing and repairing the dumptruck. Gibbons testified that the body-safety prop could be raised with one hand and that once the body-safety prop was in place, the bed of the dumptruck could not be lowered. Gibbons also testified that brake fluid could be added to the brake-fluid reservoir without being beneath the bed of the dumptruck, i.e., that it was possible to stand on the ground next to the dumptruck to add brake fluid to the reservoir.
Terex also offered the deposition and affidavit testimony of Mark Montgomery, who worked as the safety director for Elmore Sand Gravel. Montgomery also testified that the drivers or operators are instructed not to attempt to repair or to work on the dumptrucks; they are instructed to call a mechanic immediately if there are problems with the dumptrucks. Montgomery also testified that as Zeigler was leaving for the day on the day before his accident, Montgomery asked him if everything was okay with Zeigler's truck, to which Zeigler replied "yeah, yeah, yeah." Montgomery testified that he regularly asked the operators this question as they were leaving for the day.
Terex also offered the deposition testimony of Billy Stanley, the president of Elmore Sand Gravel. Stanley testified that the drivers of the dumptrucks were required to perform an inspection of their trucks both before and after their shifts and to complete a corresponding inspection report. After the accident, Stanley reviewed the reports that had been completed by Zeigler in the days preceding his accident and noted that Zeigler had not reported any problems with the brakes on the dumptruck. Stanley also testified that the drivers are trained to contact the maintenance department at Elmore Sand 
Gravel immediately if they discover a problem with the trucks or if a problem develops during their shift.
In support of its motion for a summary judgment, Terex also submitted the deposition testimony of Dupree Harvey, the vice president of Elmore Sand Gravel. Harvey testified that he had a conversation with Zeigler in May 2003 — when Zeigler was still a relatively new employee — concerning the dangers of getting under the raised bed of a dumptruck. Harvey testified that he specifically asked Zeigler how he would check his brake fluid on the dumptruck. Harvey testified:
 "I don't know why but something just told me to stop and talk to him about — *Page 179 
because he was a new hire — about telling him how to check his brake fluid. So I went up to [Zeigler] and I said, `[Zeigler,] . . . show me how you check your brake fluid.' So he went around on the passenger side and took off the cap, pointed to it or he took it off. . . . and so I said to [Zeigler], I said, `So you're telling me you don't have to get underneath the bed of the truck to check your brake fluid.' He says, `No, you just stand right here on the ground. It's about chest high. And you can reach it right here and check the brake fluid.' And I said, `Well, good answer. That's what I was looking for.' And I said, `So tell me again, you don't have to get underneath the bed of the truck to check the brake fluid.' And he said, `That's correct.'"
Harvey also testified that he told Zeigler "don't ever get underneath the bed of the truck. . . . period, no questions asked." Harvey did not know if Zeigler had ever received training on how to use the body-safety prop because "I just know he was told never to get underneath the bed of a truck, under no circumstances." Harvey added that it was unnecessary to raise the bed of the dumptruck to check the brake fluid or to do any of the items on the inspection checklist Zeigler was required to do. Harvey testified that if Zeigler had any problems with his truck, Zeigler was supposed to report them to Harvey; according to Harvey, Zeigler had not reported any problems to him.
Terex argued that, based on this evidence, Zeigler was contributorily negligent and that, therefore, Terex was entitled to a summary judgment as to Tell's AEMLD claims asserted against it.
 B. Tell's Arguments in Opposition to Terex's Motion for a Summary Judgment
Tell argues that Terex was not entitled to a summary judgment on her AEMLD claims. As the nonmovant at the summary-judgment stage, Tell argues that the evidence, when construed in her favor, as it must be, Fincher v. Robinson Bros.Lincoln-Mercury, Inc., 583 So.2d 256 (Ala. 1991), indicates that the dumptruck malfunctioned in some respect. She also argues that there are multiple safer, alternative designs for the dumptruck, which would have prevented the malfunction from occurring or would have avoided the need for Zeigler to have been working in the path of the bed of the dumptruck. Additionally, Tell argues that the evidence does not establish that Zeigler put himself in danger's way and does not establish that Zeigler consciously appreciated the danger he faced from his position in relation to the raised bed of the dumptruck at the moment the accident occurred, both of which are required to establish contributory negligence as a matter of law.
Tell argues that the evidence establishes the following in support of her argument that the dumptruck malfunctioned and that Zeigler was not contributorily negligent: that the dumptruck being driven by Zeigler suffered recurring brake problems; that on the day Zeigler was killed, he was attempting to "check his brakes" by refilling the brake-fluid reservoir and resetting the brake-overstroke sensor, which required him to be positioned under the raised bed of the dumptruck; that Zeigler left the raised bed of the dumptruck in the "hold" position when he went under the dumptruck bed and that in the "hold" position the bed of the dumptruck should have remained in the same position as Zeigler had left it; and, that, for some unexplained reason, the bed of the dumptruck collapsed or lowered itself while Zeigler was beneath the dumptruck preparing to "check on the brakes." Tell argues that this evidence leads to the inference that the dumptruck-bed *Page 180 
control malfunctioned in some way because it did not remain in the "hold" position. Tell also argues that because there were no other reported incidents of the bed of the dumptruck lowering itself when it had been left in the hold position, Zeigler could not have appreciated the danger he faced at the moment of his death.
Tell also points out that, some time after Zeigler's accident, a mechanic employed with Cowin Equipment Company, the company responsible for maintaining and servicing the dumptruck, tested a "hydraulic-control valve" from the dumptruck operated by Zeigler and found it to be defective. Because of this defect, the hydraulic-control valve was removed from the dumptruck involved in this incident a year after Zeigler's accident.[2]
Tell asserts that the existence of the defective hydraulic-control valve supports her claim that the dumptruck malfunctioned on the day of Zeigler's accident.
Tell also relies on her expert's opinion that the design of the dumptruck allowed employees "poor access" to the hydraulic-brake-fluid reservoir and to the brake-overstroke sensor. Additionally, Tell's expert testified that the design of the body-safety prop on the Terex dumptruck was "defective and dangerous" because, he said, it
 "requires the operator to place his arm or entire body under the dump bed of the truck and to reach from a dangerous position standing between the tires in order to set it. It also cannot be set unless the dump bed is almost completely raised, making an operator vulnerable if the dump bed is not completely raised and rendering it completely ineffective in such an instance."
Tell's expert testified that the dumptruck should have been designed so that the hydraulic-brake-fluid reservoir, the brake-overstroke sensor, and the body-safety prop were in a location in which it would be safer to maintain or use them.
Additionally, Tell points out that witnesses reported seeing an unopened can of brake fluid next to the dumptruck where Zeigler was found. Tell argues that, because the body-safety prop is located underneath the bed of the dumptruck, and because Zeigler was found directly on top of the body-safety prop and an unopened can of brake fluid was found next to the truck, it is possible that Zeigler was attempting to set the body-safety prop so that he could "check the brakes" when the bed controls malfunctioned, causing the bed of the dumptruck to come down unexpectedly on Zeigler.
 C. Analysis
The evidentiary showing required to obtain a summary judgment on the basis of Zeigler's contributory negligence is very demanding. See Hannah v. Gregg, Bland Berry,840 So.2d at 860-61 (recognizing that, in order to be entitled to a judgment as a matter of law based on contributory negligence at the summary-judgment stage of an action, the movant must establish by undisputed evidence that the plaintiff consciously appreciated the danger he faced at the time of his death). However, the record before us does not establish by undisputed evidence that Zeigler consciously appreciated the danger he faced at the moment of his death. As Tell argued, there are possible explanations for the accident other than that Zeigler was contributorily negligent. The evidence and theories presented by *Page 181 
Tell are sufficient to create a genuine issue of material fact as to whether Zeigler was contributorily negligent in placing himself where he could be injured by the unexpected lowering of the bed of the dumptruck. Therefore, the trial court improperly concluded that Terex was entitled to a judgment as a matter of law. We reverse the summary judgment in favor of Terex.
 II. Whether the trial court erred in denying Tell's motion to strike evidence offered by Terex that Tell says is inadmissible.
Tell next asserts that the trial court erred in denying her motion to strike certain exhibits relied upon by Terex in support of its summary-judgment motion, more specifically photographs of warning stickers purportedly affixed to the dumptruck operated by Zeigler the day of his accident and affidavits of various employees submitted by codefendant Dupree Harvey in support of his summary-judgment motion and later adopted by Terex in support of its summary-judgment motion. The trial court did not state any reasons for its denial of Tell's motion to strike.
Because we are reversing the summary judgment in favor of Terex, the issue whether the affidavits and the photographs were properly considered as evidence in support of Terex's summary-judgment motion is now moot. However, we note that in order for the photographs to be properly considered at trial, they, of course, must be properly authenticated and relevant to the issue under consideration. See Rule 901, Ala. R. Evid. (addressing the requirement that evidence be authenticated and identified); Ware v. State, 949 So.2d 169, 181-82
(Ala.Crim.App. 2006) (photographs taken some 14 months after defendant's arrest were inadmissible because they were not properly authenticated; those same photographs also were rot relevant because they were taken at a time other than the time of the defendant's arrest); and Vandiver v. State, 37 Ala.App. 526, 73 So.2d 566 (Ala.Crim.App. 1953) (photographs taken several weeks after the occurrence at issue were inadmissible to establish how the scene looked at the time of the occurrence).
 III. Whether the trial court erred in denying Tell's motions to compel discovery and Tell's motion to deny or to continue the summary-judgment motion pursuant to Rule 56(f), Ala. R. Civ. P.
Tell next challenges the trial court's ruling on her motion to compel discovery and her motion to continue the hearing on the summary-judgment motion. Before the ruling on the summary-judgment motion, Tell filed a motion pursuant to Rule 56(f), Ala. R. Civ. P., asking the trial court to continue the hearing on the summary-judgment motion or, alternatively, to deny Terex's summary-judgment motion. In support of that motion, Tell's counsel submitted an affidavit attesting that, although he had diligently pursued discovery of all relevant information, he could not adequately respond to Terex's summary-judgment motion for two reasons: (1) Terex had failed to produce a witness who was knowledgeable of the design of the dumptruck; and (2) counsel had recently learned that a defective hydraulic-control valve that had been removed from the dumptruck and that Tell had requested to examine had been discarded and was unavailable. Tell's counsel also attested that, in connection with a witness deposed pursuant to the Rule 30(b)(6), Ala. R. Civ. P., a motion to compel the deposition of the proper witness remained outstanding. Additionally, Tell's counsel attested that, in connection with the hydraulic-control valve, he needed *Page 182 
 "additional discovery to: (1) determine facts relevant to how the part was misplaced, lost, or discarded, and (2) conduct an examination of all witnesses, from Cowin [Equipment Company] or otherwise, who inspected the part and found it to be defective. Critical to this analysis will be the nature of the defect and its implications for the accident causing . . . Zeigler's death."
In its summary-judgment order, the trial court expressly denied Tell's Rule 56(f), Ala. R. Civ. P., motion to continue the hearing on the summary-judgment motion pending additional discovery and the trial court implicitly denied her motion to compel discovery from Terex. On appeal, Tell argues that the evidence sought by these motions "bear[s] on Zeigler's possible appreciation of the danger at the time of his accident, and will further negate any inference of contributory negligence." (Tell's brief at p. 62.) Thus, she asserts, the trial court erred in denying her motions.
We agree with Tell that the information she seeks is highly relevant to her claims and defenses. We also note that Tell's counsel was not dilatory in requesting the information made the basis of the Rule 56(f), Ala. R. Civ. P., motion. Throughout this litigation, Tell has requested information regarding the overall design of the dumptruck and, more specifically, information regarding the design of the electrical and hydraulic systems used in the dumptruck. Even after multiple motions to compel, Terex either failed to respond or inadequately responded to these requests.
Additionally, Tell filed a deposition notice pursuant to Rule 30(b)(6), Ala. R. Civ. P., requesting to take the deposition of a representative with knowledge of the design of the dumptruck; the representative produced by Terex pursuant to Rule 30(b)(6), Ala. R. Civ. P., however, was not familiar with the requested areas of inquiry and could not offer any information as to the design of the dumptruck. Tell requested the name of an individual with this knowledge early in the litigation, and, although Tell filed multiple motions to compel, Terex did not comply with the requests.
Additionally, Tell asserts that she learned shortly after Terex's summary-judgment motion had been filed that the defective hydraulic-control valve had been lost. Promptly upon learning this information, Tell's counsel filed the motion to continue the summary-judgment motion, pursuant to Rule 56(f), Ala. R. Civ. P., so that she could conduct discovery related to the circumstances of the disappearance of the valve and the defect found to exist in the hydraulic-control valve.
We further note that Tell requested that the summary-judgment motion be continued for an additional 90 days so that she could obtain as much information as possible about the missing valve. According to the scheduling order in place at the time of this request, the requested 90-day period for additional discovery would not have delayed the trial or impacted other deadlines that had been set by the trial court.
Rule 56(f), Ala. R. Civ. P., states:
 "Should it appear from the affidavits of a party opposing the [summary-judgment] motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
Additionally, this Court has recognized that
 "if it can be ascertained that the information sought by pending interrogatories *Page 183 
and requests for production of documents is crucial to the nonmoving party's case, it is error to enter a summary judgment before the party moving for summary judgment has produced the documents and answers to the interrogatories."
Parr v. Goodyear Tire Rubber Co., 641 So.2d 769,771 (Ala. 1994). See also Reeves v. Porter,521 So.2d 963 (Ala. 1988).
Because the information sought by Tell is crucial to her claims and defenses, the trial court erred in entering a, summary judgment in favor of Terex without allowing Tell additional time for discovery. Therefore, the trial court erred to the extent it denied Tell's motion, filed pursuant to Rule 56(f), Ala. R. Civ. P., to continue the hearing on the summary-judgment motion and to the extent it denied Tell's motion to compel additional discovery regarding the overall design of the dumptruck, the electrical and hydraulic systems used in the dumptruck, and the circumstances surrounding the missing hydraulic-control valve that was removed from the dumptruck.[3]
We reverse the summary judgment in favor of Terex and TEL. We note that the trial court erred in denying Tell's motion filed pursuant to Rule 56(f), Ala. R. Civ. P., to continue the summary-judgment hearing and to continue discovery. We remand this cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and LYONS, HARWOOD, SMITH, and PARKER, JJ., concur.
BOLIN, J., concurs in the result.
WOODALL, J., concurs in part and expresses no opinion in part.
SEE, J., dissents.
[1] Throughout the proceedings in the trial court and the appeal in this Court, Terex Corporation and TEL were represented jointly, filed joint pleadings, and asserted identical arguments.
[2] As part of Tell's discovery efforts, she requested to examine this hydraulic-control valve. However, shortly before Terex's summary-judgment motion was filed, Tell learned that the valve had been lost or discarded and was not available for examination by Tell.
[3] Our listing here is not intended to expand or limit the scope of Tell's requested discovery.